Dallas *vs.* Heard *et al.*

WILLIAM DALLAS, plaintiff in error, *vs.* JOHN W. HEARD, *et al.*, defendants in error.

1. The promissory note of a married woman having property to her separate use, constitutes a valid charge upon and binds her separate property for its payment in equity.

2. L., a married woman, having separate property and indebted to D., by note, conveys her separate property absolutely to H. and others, in consideration of their agreement to pay her an annuity during her life, and all the debts against her separate property : *Held*, that this agreement was binding upon the transferee, and could be enforced by the creditors.

3. The married woman who gave the note and made the trade and transfer, being dead, and having no representative and no estate, the bill filed to enforce the agreement is not defective because of her or her representatives not being a party to the title.

In equity, in Wilkes Superior Court. Decided by Judge THOMAS, at March Term, 1861.

The record in this case presents the following facts and questions, to-wit :

Mrs. Lucinda Lane, the wife of Micajah Lane, held and possessed certain property, a portion of which was, by a decree in equity, rendered in Troup Superior Court, vested in William Q. Anderson, "for the sole and separate use, benefit and behoof of the said Lucinda and her children, free from any debt, contract or liability of her husband," and a portion of which was, by the will of Mrs. Ann Anthony, "bequeathed to the said William Q. Anderson, in trust, for the sole and separate use of the said Lucinda and her children, during her life, and at her death, to be equally divided among the said children, the property not to be subject to the debts of the said husband of the said Lucinda."

On the 26th of March, 1856, the said Lucinda, whilst she was still a *feme covert*, and her son, Bolling A. Lane, executed a joint and several promissory note for $276 25, due one day after date, and payable to William Dallas, or bearer. At the date of the note, Mrs. Lane held the property aforesaid, and Bolling A. Lane was insolvent, and has so remained from then until now.

Dallas *vs.* Heard *et al.*

On the 9th of January, 1858, the said Lucinda Lane, and her children, James H. Lane, for himself and as assignee of Bolling A. Lane, Joseph L. Lane, John W. Heard, in right of his wife, Sarah F. Heard, formerly Sarah F. Lane, Andrew J. Lane, and George M. Lane, all entered into a written agreement, in which it was stipulated that the property aforesaid (except certain specified articles) should be "all sold, and that the proceeds of the sale, and the negroes (after payment of all debts for which said property is legally bound) be divided among said children, in consideration of which the children should each pay to the said Lucinda, annually, the one-sixth part of $350 00 during her natural life. The property was sold and divided in pursuance of this agreement, and in a short time thereafter the said Lucinda died, leaving no estate of any kind, and being insolvent, she has not and is not likely to have an administrator.

William Dallas filed his bill in equity to compel the children to pay the note given by Mrs. Lucinda Lane and Bolling Lane under the facts before stated, insisting that the debt was a charge upon the separate estate of the said Lucinda, and that as the children had the property, they ought to pay each their proper proportion of his debt.

The defendants met the bill by a demurrer, on the grounds:

1. That the bill contained no equity.

2. That no representative of Lucinda Lane's estate was a party to the bill.

3. That Bolling A., Joseph L., and George M. Lane are not made parties to the bill.

After argument had, the presiding Judge sustained the demurrer " on the first ground taken, and because it did not appear from the bill, that the note for which the complainant seeks payment, was chargeable upon the property, which the defendants received under the agreement," and directed the bill to be dismissed and judgment to be signed against complainant for cost.

This decision is the error complained of in the record.

W. M. REESE, for plaintiff in error.

HESTER & AKERMAN, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

Lucinda Lane, a married woman, having a life estate in certain real and personal property, secured to her sole and separate use, executed on the 26th March, 1856, to the complainant, jointly and severally with her son Bolling A. Lane, a promissory note for the sum of $274 25. On the 9th January, 1858, the note being unpaid, Mrs. Lane assigned this life estate, being the whole of her separate estate, to the defendants, upon the consideration that they would pay all debts for which said property was legally bound, and that each of them would pay to her annually during her life the one-sixth of $350 00. Bolling A., the other party to the note, being insolvent, and Lucinda Lane having departed this life without leaving any assets for the payment of this debt, the complainant filed this bill against defendants to compel a payment of the note under their agreement with the said Lucinda, upon taking her assignment thereof to the property. To this bill defendants demurred, on the grounds 1. That the bill was without equity. 2. That sufficient parties to the bill had not been made. The first grounds involves two questions.

1. Whether the life-estate of Lucinda Lane, in the property assigned to defendants, that being an estate to the sole and separate use of the said Lucinda Lane, a *feme covert,* was subject to, or .bound for, the payment of this debt while in her hands and before assignment to defendants?

2. Whether this bill could be maintained by the complainant against the defendants on their agreement with the said Lucinda Lane, the complainant being no party but a stranger thereto.

1. As to the first question, that is, whether the property was bound for the payment of the debt? we hold that it was. Whenever property is secured to a *feme covert* to her sole and separate use, without qualification, limitations or restrictions as to its use and enjoyment, she is to be regarded in respect

to such estate, in all respects, as a *feme sole*, and it is charge-
able and bound for the payment of all debts contracted by
her that may be secured by her promissory note, or other
undertaking in writing, to pay the same, whether such note
is given by her alone or jointly with others; she being the
sole and exclusive owner of the property, she holds it with
all the incidents of property—the right of selling, giving, or
charging it with the payment of debts.  A brief examina-
tion or reference to the principal adjudications on this sub-
ject will show that this is now the settled doctrine of the
Chancery Courts of England, and was so at and long before
the 16th day of May, 1776, the time at which the laws of
England, then in force, were adopted and declared to be of
force in this State by the adopting act of 25th February,
1784.  The earliest reported case that I can lay my hands
upon, though there are others of a much earlier date that I
can not get, is that of Powell vs. Hankey, 2 Peere William's,
82, decided by Lord Hardwick in 1722.  In that case the
husband had received from the trustees of the wife £200, the
proceeds of the sale of a part of the wife's real estate, secured
to her sole and separate use, and had given to the trustees
his bond for the amount, payable three months after the
death of the wife, for the benefit of the executors.  After his,
the husband's, death, the wife filed a bill against the execu-
tors of her husband for an account, among other things, for
that £200, with the interest.  The Court held as to this
£200, being her separate estate, as she had accepted the bond
so payable in the husband's life time, she was bound by it—
as to it she must *prima facie* be looked upon as a *feme sole;*
it was as if a *feme sole* had accepted such a bond."  In Nor-
ton vs. Turville, 2 Peere William, 144, the wife, before
marriage, with the consent of the intended husband, conveyed
an estate to trustees for her sole and separate use after mar-
riage.  During the coverture she borrowed £25, and gave
her bond for its payment.  Ten years afterwards, she made her
will, appointing A and B her executors, her husband pos-
sessed himself of £24 of her separate estate.  After which
the obligee in the bond brought a bill against the executors

and the husband for the recovery of the £25 out of the separate estate of the wife in their hands. The Court held that all the separate estate of the wife was trust fund for the payment of debts, and that the plaintiff ought to be at liberty to prosecute all the defendants in order to be paid out of the separate estate of the *feme covert*. The Court stated that this "was a trust estate for the payment of debt," as an answer to the plea of the Statute of Limitations interposed by defendants. Had the wife charged her separate estate by will or deed with the payment of debts, under a supposed power of appointment in the instrument creating this estate in her favor, the objection of the defendant that the bond was void, and not recoverable, would have been out of place, and there would have been no necessity for the bill or the litigation, as assets were admitted, or if so the litigation must have turned on a wholly different point. These observations on this case are made in reply to Chancellor Kent's attack upon it in the Methodist Episcopal Church vs. Jaques, 3 John's Ch., 93.

3. Lord Hardwick ruled, in Redout vs. Lewis, 1 Atk., 269, "that the wife might come to an agreement with her husband in relation to anything she held separately;" in Stanford vs. Marshall, 2 Atk., 69, that the separate estate of *feme covert*, who had become sureties with their husbands, were responsible to the creditors; in Allen vs. Papworth, 1 Ves., Sen., 163, that if a *feme covert* having power to receive the profits of an estate to her separate use, and to appoint them as she pleased, brings a bill jointly with her husband for an account, and submitting that the profits should be applied to the payment of the husband's debts, and a decree passes, that bill to which she was made a party without collusion, is as much an execution of her power as an actual appointment would have been, and the profits shall be bound by the decree. In Heade vs. Greenbank, 1 Ves., Sen., 303, it is a rule of Court that a *feme covert* may dispose of her personal estate when given to her separate use. In Grigby vs. Cox., 1 Ves., 518, "the rule of Court is, that when anything is settled to the wife's separate use, she is considered as

a *feme sole;* may appoint in what manner she pleases, and unless the joining of her trustees with her is made necessary, there is no occasion for that." In Peacock vs. Monk, 2 Ves., 192, "if a wife having an estate to her separate use borrows money, which she gives a bond to pay under her hand, this would give a foundation to demand the money against her out of her separate estate, she being considered as a *feme sole* as to that, and the declarations of her to the debtor may be read in evidence." And in Pawlet vs. Delaval, 2 Ves., Sr., 662, " there is no determination in this Court that this Court would not permit a wife to dispose of her separate property to her husband, who, by the trust, is excluded from meddling with it, unless it was by her judicial consent in this Court, or by intervention of friends or trustees. Several instances have been, where wives, by acts in *pais*, have parted with separate property to husbands, and when there has been no menace or imposition, it has taken place; and there are several instances wherein wives concurred to pledge part of their separate property for a debt of the husband as a security; the Court has never said that the security should not take place, but held it to stand as a pledge indeed, and that the husband should exonerate."

Thus stood the question in 1776, without an adjudication or even dicta to the contrary. Then came the decision in Hulme vs. Tenant, 3 Bro., C. C., 16, in 1778. That was a plea filed by the obligee in a bond entered into by the defendants, husband and wife, to secure £180—to recover the sum out of the separate estate of the wife, which, upon marriage, the wife had conveyed to trustees, in trust, to pay the wife the rents and profits to her separate use, and to convey the estate to such use as she, by deed or will, in writing, should appoint, and in default of appointment, to her heirs and assigns. Lord Thurlow said : " The rule laid down in Peacock, that a *feme covert*, acting with respect to her separate property, is competent to act, in all respects, as if she were a *feme sole*, is the proper rule, and necessary to support the decisions on this subject. I take it therefore it is impossible to say, but that a *feme covert* is competent to act as a

*feme sole*, with respect to separate property when settled to her separate use; but the question here goes a little beyond that; it is not only how far she may act upon her separate property—I have no doubt about that—but the question is, how far her general personal engagement shall be executed out of her separate property. If she had, by instrument, contracted that this or that portion of her separate estate should be disposed of in this or that way, I think she or her trustees might have been decreed to make that disposition; but if she enter into an engagement which would make a *feme sole* liable to the whole extent of the contract as to her person, etc., in every respect, it is clear that such general engagement will not bind her as such. It is not like an infant that is incapable of acting; but in respect to a *feme covert*, determined cases seem to go thus far, that the general engagement of the wife shall operate upon her personal property, shall apply to the rents and profits of her real estate, and that her trustees shall be obliged to apply personal property, and rents, and profits, when they arise, to the satisfaction of her general engagements." " I have no doubt of this principle, that, if a Court of Equity says a *feme covert* may have a separate estate, the Court will bind her to the whole extent, as to making that estate liable to her own engagements; as, for instance, for payment of debts, etc." This was followed by the cases of Pybus vs. Smith, Clark vs. Pistor, Nieman vs. Cartony,.3 Bro., C. C., 347; Ellis vs. Atkinson, 3 Bro., C., 565. In Pybus vs. Smith, the real estate of the wife was conveyed to trustees, in trust, to permit the wife to receive or to pay the rents and profits to such use and purposes as the wife should, from time to time, by any writing, direct and appoint, and in default of direction, to the wife for her sole and separate use, and after the death of the wife, the estate itself to hold in trust for such person and such uses, and in manner and form as the wife, by deed or instrument, should direct and appoint, and in case of no appoinment, then in trust for the wife, her heirs and assigns. Certain bank annuities of the wife were also transferred to the trustees, in trust, to pay the dividends to such persons

Dallas *vs.* Heard *et al.*

and such uses as the wife, in writing, should appoint, and in default of such appointment, to pay to the wife for her sole and separate use, and after the death of the wife, to sell and apply among the children of the marriage, and in default of children, to such uses as the wife, in writing, should appoint, and in default of appointment, to the next of kin of the wife. The wife subsequently conveyed the whole estate to trustees in trust for the payment of the debts of the husband. On bill filed by the plaintiffs to compel the trustees to pay the rents and dividends to them, and to join in a sale of the reversionary and contingent interest of the wife in the real estate and money in funds, Lord Thurlow, with the greatest desire to save the wife from the imprudent and sweeping disposition of her estate, said, " if the point was open, he should have thought that a *feme covert*, who had a separate estate, should not part with it without an examination ; but a *feme covert* had been considered by the Court with respect to the separate estate as a *feme sole*, therefore, though he had been desirous of going as far as he could, he found he had gone too far on a previous occasion, (alluding, says. the editor of the reports, to the case of Ellis vs. Atkinson.) If a *feme covert* sees what she is about, the Court allows of her alienation of her separate property. In Clark vs. Pistor bank stock was transferred to trustees in trust to pay the interest and dividends to such person as plaintiff Margaret, from time to time, during her life, by writing, should appoint, and in default of appointment, to the said Margaret for her separate use, and after her death, to transfer the stock to her husband absolutely. On bill by husband and wife, without appointment and on consent of the wife, the Court directed the trustees to transfer. In Nieman vs. Cartony, a legacy had been given to the wife for her sole use, with a power of appointment by will, and in default, to her executors. It was ordered, on her consent, to be paid to the husband. In Ellis vs. Atkinson, certain property was secured to the separate use of the wife during her life, and in case she survived the husband, to be in trust for the wife, etc., and if the husband survived, then for and to such person as the wife, by deed or

will, might appoint, and in default of appointment, then to her executors and administrators, as part of her personal estate. The husband and wife agreed that the whole should be assigned to the husband. On bill filed by the husband and wife, the Court decreed that the assignment should be made. The next case is that of Sockett *vs.* Wray, 4 Bro., C., 483. In that case certain stocks were held by trustees upon trust, that they should, from time to time during the life of the wife, pay over the dividends to her, and for her sole, absolute and separate use, or to such person as she, by note or instrument, appoint, and after the decease of the wife, upon trust that the trustees should transfer the stock itself unto such persons as the wife, whether then *covert* or *sole*, should, during life, by will appoint, and in default of such appointment, to the executors and administrators of the wife for their own use.

The bill was by the husband and wife to require the trustees to sell out the stocks and pay the money to them. Lord Alvanley ruled, that as the wife, by the settlement, was restricted to a disposition of the principal by will, she could only dispose of in that way, not by deed, but in so holding, he subscribed to Norton *vs.* Turville, and concurred in the *dictum* in Hulme *vs.* Tenant, that when a power is given to a married woman to act on her property, she is so far to be considered as a *feme sole.* That is the rule of this Court, that when there is no restraint in the instrument creating the separate estate, upon the wife's power of disposition, she is to be considered in respect to it as a *feme sole*, but if the Court can gather from the conveyance or settlement, under which the wife holds, no intention to limit or restrain the wife's power of disposition, or of charging the separate estate, that limitation and restriction must and will be rigidly enforced, and when one mode of disposition is given that excludes all others. The neglect of the Courts to observe and enforce this principle involved the Chancery Courts of England in great trouble, and created that confusion and apparent inconsistency in their adjudications, upon this subject that was so forcibly demonstrated by Chancellor Kent in the close exam-

Dallas *vs.* Heard *et al.*

ination he gave them in the Methodist Episcopal Church vs. Jaques. In Fettiplace vs. Gorges, 1 Ves., 46, a *feme covert* having an annuity of £200, and also stock for £1,000, to her sole and separate use, by will, devised the whole consisting of two sums of £1,000 and £1,900 in stocks, to her neice. On bill filed by the husband against the devisee, claiming these sums and the dividends, since his wife's death, Lord Thurlow said, " The single question is, whether the incidents to sole and separate property do not follow it." "I have always thought it settled that from the moment in which a woman takes property to her sole and separate use, from the same moment she has the sole and separate right to dispose of it. It is incident to dispose of the savings out of her personal estate. Upon the cases I have always taken this ground, that personal property the moment it can be enjoyed, must be enjoyed with all its incidents." In Milnes vs. Busk, 2 Ves., 498, Lord Loughborough said, " It is contended that when a married woman had separate property it has been held by modern determinations that she is to all intents and purposes to be considered a *feme sole.* I am not inclined at present to assent to that in that extent. It is carried a great deal farther than I apprehend it was meant. As to all her debts and engagements, with regard to that, she shall be answerable as a *feme sole* would be to the extent of that ; she may bind herself and contract debts ; it is held now that she may be sued, and it may be recovered against her ; she may transact and make bargains ; but that it has gone farther, etc.; and that she should be considered as a *feme sole quoad* her husband, and in transactions between them, would require great consideration. In Hyde vs. Price, 3 Ves., 437, the husband transferred certain stock to trustees in trust to receive the interest, dividends and annual proceeds during the joint lives of himself and wife, (they living separate at the time,) for her support and maintenance. The wife subsequently granted some annuities, chargeable on this stock, and the grantee filed a bill to have the dividend applied to the payment of the annuity. Lord Loughborough, laying hold of the words, maintenance and support, said that the husband

did not intend that the wife should have the same dominion over the property as a *feme sole* would have of her property, and that it was not property she, the wife, is entitled to, to her sole and separate use, there is a special trust upon it. She has no dominion over it. The grant made by her is in defiance of the deed, and therefore can not be supported in this Court. In Whistler vs. Newman, 4 Ves., 129, stock was transferred to trustees in trust to pay the dividends to the wife from time to time as her sole and separate property, and after her death, to the children of the marriage as the wife, by will, should appoint. In default of appointment by will, then to the children. In default of children, then to such uses as the wife, by will, should appoint; and in default of such appointment, then to her executors and administrators. The trustees, after the marriage, upon the application of the husband and wife, sold out the stock, and paid the money to the husband, Maidment, one of the trustees, being an uncle and a creditor of the husband at the time of the transaction. The husband dying insolvent, leaving his wife, and six children by her, surviving, the trustees replaced the stock, but retained the dividends, and the wife and children filed a bill to compel the trustees to pay the dividends to her, and to transfer the stock upon the trusts of the settlement. Lord Loughborough, in his decision, took occasion to strongly condemn Hulme vs. Tenant, Pyles vs. Smith, and Ellis vs. Atkinson, in which a married woman, without any formal examination, any act done by her, or any thing to give validity and sanction to the act she was about to do, having a right to the separate use of an income of a real estate, or of a fund vested in trustees, and therefore under the control of this Court, was considered as being *sui juris,* and the Court dealt with her exactly as they would have done with the husband. "I do not," says he, "hold it necessary to go into the investigation of those different cases, but I cannot help making one remark, that if the rule laid down in them is to be pushed to its full extent, a married woman, having trustees, and her property under the jurisdiction of this Court, is infinitely worse off, and much more

Dallas *vs.* Heard *et al.*

unprotected, than she would be if left to her legal rights, which the husband cannot *proprio marte* affect," etc. "This case is under different circumstances, very different from all those cases that I have looked into; for, in those cases the question always came on upon the claim of a creditor of a husband's, standing with regard to him upon a very fair, good consideration, and not bound by any tie or condition, or any duty toward the wife; bound by nothing but common humanity, and having a right to get what he could for a debt due from the husband." "When it may be necessary with regard to creditors to enter into the consideration of these cases, it will be to be considered whether the Court ought to do more than this, when the creditors of the husband or person dealing with the married woman, has got any legal hold of the fund, he must take it; if he has not any legal hold upon it, I am much at loss for any principle upon which the Court can make his situation better, or improve a security that the law will not acknowledge."

The Chancellor did not, in this case, overrule the former adjudications of the Court on this subject, although he evidently believed them to be erroneous; but upon the particular circumstances of the case took it out of the rule of those cases and supported the bill of the wife and children. In the subsequent case of Moses vs. Hursh, 5 Vesey, 692, where one had purchased an annuity from a married woman who had real and personal estate settled to her separate use, against the strong objection of the trustee on account of the idleness and extravagance of the husband, and the probability that the wife and children would come to the parish, Lord Loughborough dismissed the bill of the purchaser to have the rents and profits applied to the payment of the annuity, without taking it out of the rule, and without any other reason than that this was a mere trust to receive the rents and profits, and from time to time to the separate use of the wife, and that the purchaser, under the circumstances, was not entitled to the consideration of a Court of Equity. These cases and dicta of Lord Loughborough, although they created great doubt and distraction in the mind of his suc-

cessor, Lord Elden, were never followed, but have been uniformly disregarded from that day to this.    In Sherling vs. Rockfort, 8 Vesey, 178, Lord Elden said:    "Wishing that the law may turn out for the protection of married women to the extent in which it is represented in Whistle vs. Newman, I find it impossible to reconcile all that is said in that case to former cases."    Again he says, in Parkes vs. White, 11 Vesey, 223, in reference to the case of Whistler vs. Newman, "upon which it does not become me to make any other remark, than that, when this case comes on to be argued again, it must be considered, how far that case is consistent with preceding authorities; if it is not, then whether it was competent to the Court, in that year, to refuse to make a decree consistent with all the declarations of this Court for a century.    If it is, asserted, that though Lord Thurlow, following his predecessors as far back as the doctrine can be traced, repeatedly decided upon this principle, this Court has now a right to refuse to follow it, I am not bold enough to act upon that position."    And when the case was again considered by him, 236, he said:    "My judgment is, that in this Court a married woman having property to her separate use is capable of selling it, provided she is *bona fide* dealing with persons competent to deal with her and not taking unfair advantage of her."    In Wagstaff vs. Smith, 9 Vesey, 523, Sir William Grant, Master of the Rolls, said:    "The only question appears to me to be, whether this lady has an absolute complete life interest in the dividends to her separate use.    If she has, then, unless the former doctrine of this Court, that as to separate property, a married woman is to be considered a *feme sole*, is abrogated by later determinations, she had a right to make any disposition she thought fit of that separate property.    There is no case in which that doctrine has been impeached; that is the broad rule that a married woman is to be considered a *feme sole* as to property to her separate use.    There are many cases in which the question has been, whether the absolute property, including a power of disposition, was intended to be given, or whether it was a personal gift only, without a power of disposition,

and where the Court has seen, from the words, an intention to limit her to a personal gift, without a power of disposition, the Court has said, that conditions might be imposed, and an interest inconsistent with it should not be effectual."

In Sturges vs. Corp, 13 Vesey, 192, Sir William Grant again says: "When property is settled to the use of a married woman an examination is not necessary." And in Essex vs. Atkins, 14 Vesey, 547, "notwithstanding Lord Rosslyn's doubt, the established doctrine is, that a married woman can bind her separate property without the trustees, unless their assent is rendered necessary by the instrument giving her the property." Again, in Heatly vs. Thomas, 15 Vesey, 596, where a married woman having property to her separate use had joined with her husband and another in the giving of a bond for the sum of £500, "if this was absolutely separate property in Mrs. Johnson, that takes it out of the case of Sockett vs. Wray to that of Hulme vs. Tenant," and upon consideration of the settlement, "it was declared that the separate estate of Sarah Johnson, (the *feme covert*,) with that of the other defendants, were jointly and severally liable to pay the principal and interest on the plaintiff's bond." In an anonymous case, 18 Vesey, 258, "a married woman having separate property died indebted by bond and simple contract." Sir William Grant held, "that the circumstances of debt contracted by a married woman being secured by a bond did not give the creditor any priority, the bond, considered security as a bond, being void; therefore, all the debts must be paid equally." In Stewart vs. Kirkwall, 3 Madd., Ch., 387, when Lady Kirkwall, having a separate estate, and living apart from her husband, accepted a bill of exchange, on bill filed by the holder to charge her separate estate with its payment, the Vice Chancellor (Sir John Leach) said:

"I had occasion to consider this doctrine fully in Greatly vs. Noble. (3 Madd. Ch., 49.) I then was and am now of opinion, that a *feme covert* being incapable of contract, this Court can not subject her separate property to general demands. But that as incident to the power of enjoyment of separate

property, she has a power to appoint it, and that this Court will consider a security executed by her as an appointment *pro tanto* of her separate estate. Let the decree be according to the prayer of the bill."

I will endeavor to show, in a subsequent place, what is meant by "general demands," as used by the Vice Chancellor in this case. The dictum in Greatly vs. Noble, is: "At law there can be no separate enjoyment of property by a *feme covert;* in equity there may, and as incident to the power of enjoyment, she has a power of charging her separate property. When a wife, as in Hulme vs. Tenant and other cases, joins with her husband in security, it is implied to be an execution of her power to charge her separate property. If it were necessary now to decide the point, I think it would be difficult to find either principle or authority for reaching the separate estate of a *feme covert* as if she were a *feme sole,* without any charge on her part, either express or implied."

In Field vs. Sowle, 4 Russ., 112, (4 Eng. Ch. R., 113,) when certain real estate was secured to the separate use of the wife, with power to appoint the property by deed or other writing, or by her will, the wife, after marriage, joined her husband in a promissory note to the plaintiff Field, the same Vice Chancellor ruled that "the signature of the promissory note, by the defendant, Sarah Sowle, is sufficient to charge her. The Courts act upon the security of the wife, not as an agreement to charge her separate property, but as equitable appointment under the settlement;" decree for satisfaction out of the rents and profits. In Murray vs. Barbe, 4 Lim., (6 Eng. Ch., 192,) a married woman having separate property, and living apart from her husband, employed the plaintiffs as her solicitors in various matters of litigation she had with her husband and others, and promised by letter to pay their bills, without reference to her separate estate. Vice Chancellor Sir L. Shadwell, upon consideration of all the authorities, held that the separate property was liable to the demands of the plaintiffs. From this decision of the Vice Chancellor an appeal was taken, and the judgment of the Vice Chancellor affirmed. 3 Myl. & K., 219, (10 Eng. Ch.)

There is one class of cases that I have not up to this time noticed, and it is not necessary now that I should do so, as they do not necessarily apply to the question in this case, but as reference is made to them, not only in the adjudications to which I have referred, but by text writers in the discussion of this question, it will not be amiss to give them some attention.   I allude to those cases arising upon what is most frequently called the general demands against the married woman having separate property.   Sir John Leach in Greatly vs. Noble, said " it would be difficult to find either principle or authority for reaching the separate estate of a *feme covert* as if she were *sole,* without any charge, on her part, either express or implied," and in Stuart vs. Kirkland, that he " then was of opinion that a *feme covert* being incapable of contract, this Court cannot subject her separate property to general demands."   Mr. Story, in Eq. Jur., sec. 1398, says: "In the first place, her separate property is not, in equity, liable for the payment of her general personal engagement. If, therefore, a married woman should, during her coverture, contract debts generally without doing any act indicating an intention to charge her separate property with the payment of them, Courts of Equity will not entertain jurisdiction to enforce payment thereof out of such estate during her life." This text, and the *dicta* to which I have referred, is calculated to mislead one, for the terms " general personal engagements," "general demands," and " contracting debts," will cover every species of debt or contract made by the wife when no special charge is made upon the separate estate. The cases referred to in support of this broad rule do not support it.   They are The Duke of Bolton vs. Williams, 2 Ves., 138 ; S. C., 4 Bro. C. 297; Jones vs. Harris, 9 Ves., 498 ; Stewart vs. Kirkland, 3 Madd. Ch., 387 ; Greatly vs. Noble, 3 Madd. Ch., 94; Aguillar vs. Aguillar, 5 Madd., 418.   In all these cases, except that of Greatly vs. Noble, the *feme coverts* had granted annuities out of and chargeable upon their separate estates, which were declared to be void, because of the grantee's failure or neglect to make them effectual and available by a compliance with the provisions of the statute

under which they were taken and allowed, that of 17 George 1, ch. 26, I believe ; and upon the failure of the annuities, the grantees sought to charge the separate estate of *feme coverts* with the re-payment of the money advanced for the same. The Court uniformly refused to allow this to be done. The principle upon which a Court of Equity lays hold of the separate property of a married woman, and charges it with the payment of her bond, note, or other obligation is this, that as she is incapable in law, as a married woman, to act, and that her bond, note, or other obligation is void, and can not be enforced against. her personally, yet as she has property over which she has absolute dominion, when she deals with another, obtains credit, and gives her obligation to pay, she is presumed to treat with respect to her separate estate, and that she intends to charge such estate with the payment of the debts she so makes, and that it is upon this presumption and intention that the credit is extended to her, and the security taken for its payment. Hence a Court of Equity, in making the separate estate liable, is but enforcing, if not the express, the implied contract of the parties. Now it is perfectly clear that in the cases above cited, cases of Bolton vs. Williams, and others, no such implied contract could be inferred. The *feme covert* intended to grant an annuity, not to charge her separate estate with the re-payment of the purchase price received by her for such grant. The purchaser did not intend or expect any such security, and so the question is strongly put by Lord Elden in Jones vs. Harris, 9 Ves., 496, " it is very difficult," says he, " to maintain that where her intention was not to contract a personal debt, or to charge a gross sum upon her separate estate, but the contract was for an annuity, which contract the party dealing had it in his power to make effectual, and such as to bind her according to the intention of both, and he failed in that a Court of Equity ought to assist him, and to give him such a charge as she did not intend to give him, or he to have.

1. I doubted, and am confirmed in that by Williams vs. The Duke of Bolton, whether there is any authority that merely because a man contracts with a married woman, the

Court would consider him in all events as contracting with her not as a married woman merely, but as a married woman having a separate estate." The case of Greatly vs. Noble is very different; that was a bill to charge the separate estate of a married woman with money that she obtained fraudulently, and as it was alleged that the money was invested by the trustees for the use of such married woman, the bill was sustained for the purpose of compelling the trustees to transfer the property so acquired to the plaintiffs.

From this too greatly extended reference it will be seen that the rule adopted by this Court falls far short of that of most of the cases cited, for in many of them the restraint upon the *feme covert's* power of alienation of the separate estate, that was evidently intended to be imposed by the instrument creating such estate, has been disregarded by the Court, while our rule, on the contrary, is that as to her separate estate, she is a *feme sole sub moda,* to the extent that the instrument creating the separate estate makes her so. We might, under the adjudications, have gone further, but as there was no conflict up to the point we have gone, we could not, without a violation of all precedent, have failed to go as far as we have. I mean, of course, of the precedent of the English Chancery Courts. The American cases I have not considered, nor shall, for they are so conflicting, and at such variance, that they either furnish no rule at all or leave us at liberty to adopt such as we might deem the most just and equitable. Indeed, did we not feel ourselves constrained by precedent we should, notwithstanding, adopt the rule that we have, as affording the most ample protection to the married woman, and at the same time extending to her the fullest and most perfect enjoyment of her separate estate. Under it the parents or friends making the settlement may so guard her estate that she can not touch or convert the *corpus,* or they may, by confiding in her intelligence and capacity to manage and protect her own interests, clothe her with the same power of control and management as if she were a *feme sole,* and this they will

do when they give to her property, to her sole and separate use, without restriction as to its use and enjoyment.

2. The next question, as to whether the plaintiff, he being no party to the agreement, can enforce this agreement against these defendants, in equity, is one which is no longer open, for it is controlled by the decision of this Court at the Macon January Term, 1861, of Bell vs. McGrady, *et al.* The firm Gardner & Kendrick, parties in a livery stable, buggies and horses, etc., sold and conveyed the livery stable and their entire stock to McGrady, one of the defendants, McGrady agreeing, in part consideration of such purchase, to pay all the debts and liabilities of the firm of Gardner & Kendrick. Bell, the holder of a note on G. & K., filed his bill against McGrady to compel a payment of the note on Gardner & Kendrick, both of whom were insolvent. This Court, on demurrer, sustained the bill, holding that "it was proper for this creditor to go into equity to enforce this agreement in behalf of himself and others." Behind a decision directly in point, as we hold this to be, this Court will not go. In that case, Gardner & Kendrick, as Mrs. Lane in this, had parted with the entire dominion of the property. The agreement was not a mere declaration of intention in favor of the creditors, that might be re-called or controlled by the grantor; but it was an executed trust, complete at law, and in this the cases differ from the many cases of voluntary assignment for the payment of debts, etc., to which reference has been made. See Ellison vs. Ellison, 6 Vesey, 662; Garrard vs. Lord Lauderdale, 4 Russ., and My., (11 Eng. Ch.,) 453–4; Nicoll vs. Mumford, 4 John. Ch., 529; Moses vs. Murgatroyd, 1 John., Ch., 129; Fortesque vs. Barnett, 3 Myl. and K., (10 Eng. Ch.,) 42; Story's Eq. Jur, sec. 793. a.

3. Mrs. Lucinda Lane being dead, and no administration being had, and no necessity for one, as she had no property to administer, are sufficient excuses for not making her a party to the bill.

The objection as to Bolling A., Joseph S., and George M. Lane not being parties, was not insisted upon, nor in fact was that as to Mrs. Lane; besides, the objection does not

seem to exist, as all these persons seem, from the record, to be parties, and to have been served with the bill. The only necessary parties to this bill are those who made this agreement, who received the life estate of Lucinda Lane, and these seem to be proved; if they are not, they ought to be.

Let the judgment be reversed.