## HOWARD *vs.* SIMPKINS *et al.*

[After this case was argued, but before the decision was announced, Crawford, J., died, and Blandford, J., was elected to succeed him.]

1. The plea of the general issue having been filed at the first term, to a suit on two promissory notes, pleas that both notes were given for the same consideration, the last being given on the representation that the first was lost, failure of consideration, minority and coverture, may be added by way of amendment.

2. A promissory note payable to order, which stated that it was given for a buggy and harness, "upon the distinct understanding that the title was not to pass" until paid for in full, was negotiable.

    (*a.*) In the hands of a *bona fide* holder for value before due and without notice, no defences could be set up to a suit thereon, except *non est factum*, gambling or immoral and illegal consideration, or fraud in its procurement.

    (*b.*) A promissory note given for a buggy and harness, being absolute on its face, a reservation therein of title by the payee until full payment was not sufficient to put an endorsee for value, before due, on notice of any defence by the maker.

3. The plea of infancy goes to the capacity to contract, and a *bona fide* holder before due and without notice is not protected therefrom.

    (*a.*) A buggy not being an article of necessity to an infant, no recovery could be had against him on a note given therefor.

    (*b.*) Were it otherwise, could he be made to pay its value to any one but him with whom he contracted? *Quære.*

    (*c.*) That a minor is employed as a clerk, is not such a business as would render him responsible for his contracts under section 2733 of the Code. Were this not so, no connection is shown between the purchase of a buggy and the business of clerking.

4. By the common law a married woman could not make a note at all; nor could she ratify it during coverture, or afterwards, except on a new consideration.

    (*a.*) In this state the wife is a *feme sole* as to her own property, and may contract, except to bind her separate estate by any contract of suretyship, or to assume the debt of her husband, or to pay the same by any sale of her separate estate to his creditor.

    (*b.*) While a married woman cannot legally become a security for another's debt, yet where she has signed a negotiable note with another, as a joint maker, for the purpose of securing the debt of the latter, and it has been transferred to a *bona fide* purchaser for value before due and without notice, it is valid, and binds her.

August 27, 1883.

Amendment. Pleading. Promissory Notes. Contracts. Infants. Married Women. Notice. Before Judge EVE. City Court of Richmond County. January Term, 1883.

Reported in the decision.

F. H. MILLER, for plaintiff in error.

F. W. CAPERS, Jr.; HARPER & BROTHER, for defendants.

JACKSON, Chief Justice.

The plaintiff brought suit on the two following notes:

"$150.00                                  AUGUSTA, GA., August 6th, 1881.

"On the first of November, we promise to pay to C. Toler, or order, one hundred and fifty dollars, at either bank in the city of Augusta, Ga., for one end-spring top buggy and harness this day delivered to me, upon the distinct understanding that the title was not to pass to me until paid for in full, and he is authorized to take possession of same at any time until fully paid.

H. M. SIMPKINS,<br>M. L. SIMPKINS."

Endorsed, "C. TOLER."

"$150.00                                  AUGUSTA, GA., August 25, 1881.

"Sixty days after date, I promise to pay C. Toler, or order, one hundred and fifty dollars, at either bank in the city of Augusta, Ga., for one end-spring top buggy, harness, whip and mat, this day delivered to me, upon the distinct understanding that the title was not to pass to me until paid for in full, and he is authorized to take possession of same at any time until fully paid for.

H. M. SIMPKINS,<br>M. L. SIMPKINS."

Endorsed, "C. TOLER."

Plaintiff was endorsee for value before the maturity of the notes, holding them as collateral for a debt due him by the payee. The defence is that the notes are not negotiable so as to shut out the equities between the original parties in favor of a holder for value before due; that both notes were given for the same consideration, the last in place of the first, on the representation of the payee that he had lost the first; that the consideration had failed, in

that the payee had taken back the buggy, under the terms of the contract on the face of the notes ; that one of the defendants is a minor and the other surety only, and a married woman, and neither, therefore, liable to pay the debt.

1. These defences were set up by pleas at the trial term, the general issue having been filed at the first term, and plaintiff objected to them for that reason as being too late. They were in time, as amendments to the plea of the general issue.

2. The notes are negotiable. It was so held when the case was here before,* and our statute is very plain on the subject. The Code, section 2776, declares that any " contract in writing for the payment of money or any article of property, * * is negotiable by indorsement or written assignment, in the same manner as bills of exchange and promissory notes." These notes were made payable to the order of Toler, and when indorsed by him to Howard, the plaintiff, the title passed to him, and they stand as any other promissory notes would in his hands as holder for value before due. The only defences which could be set up to them, then, are prescribed in our Code. Section 2785 declares that "the *bona fide* holder for value of a bill, draft, or promissory note, or other negotiable instrument, who receives the same before it is due, and without notice of any defect or defence, shall be protected from any defences set up by the maker, acceptor or indorser, except the following: 1. *Non est factum* ; 2. Gambling, or immoral and illegal consideration ; 3. Fraud in its procurement."

Is there notice here to affect this holder? None is pretended, except what appears on the face of the instruments. That only affects a reservation of title to the buggy until the note is paid. It reserves a right to the payee; none to the makers. They bind themselves to pay the money at maturity, in any event. He reserves the title to the buggy as a security until all that becomes due is paid. Such a

Howard *vs.* Simpkins *et al.*

reservation puts no purchaser of the negotiable instrument on notice of any sort of defence to it, for none is hinted at in the paper. 2 *Kelly*, 92; 3 *Ib.*, 47; 22 *Ga.*, 246; 25 *Ib.*, 225; 61 *Ib.*, 208.

3. But is not the plea of infancy good? The *bona fide* holder is not protected against that plea. It is incapacity to contract. 1 Parsons on Bills and Notes, p. 276; also p. 67 *η*. F., and cases cited. Code, 2729. This rule of common law and of the Code, has not been varied by statute, or by any change of the law as to infants, by any decision of this court.

The consideration of the note is a buggy; not an article of necessity to an infant. Therefore, he is not bound to pay even the value of the note, under section 2731 of the Code, even if he could be made to pay it at all to any one but him with whom he contracted for the necessaries. 10 Johnson, 33; 10 Metcalf, 387.

Nor is he liable under section 2733 of the Code, which enacts : " If an infant, by permission of his parent or guardian, or by permission of law, practices any profession or trade, or engages in any business as an adult, he shall be bound for all contracts connected with such profession, trade or business." He was a mere clerk; therefore, he was practicing no trade or profession, and hardly carrying on any business as an adult, in the sense of the statute. That sense is an engagement in business for himself; not the mere fact that he is hired to clerk for others. But even if clerking were a business of his own, in the sense of this section of the Code, we do not see the connection between a buggy and the business of clerking; and the statute makes him liable for " contracts connected with such profession, trade or business." No proof is in the record that he used the buggy, or bought the buggy to use, in the business of clerking.

For these reasons, we think it clear that the judgment of the court below is right so far as respects the infant.

4. Is it right in sustaining the plea of the mother that

she signed the note as surety for her son, and being a married woman, it is void as to her.

By the common law, she could not make the note at all. 1 Parsons on Bills and Notes, p. 276 ; also p. 79, and cases cited. And because of her incapacity to make it, she would stand exactly like the infant; nay, in better condition to defend, because she could not ratify at all during the coverture, or after its termination, except on a new consideration. 2 B. & Ad., 811; 8 A. & E. 467; 2 Sand., 311 ; 6 Ala., 737. In this state, even before the act of 1866 and subsequent constitutional and legislative enactments, tending to make her a *feme sole*, she could bind her unincumbered separate estate by promissory note. 32 *Ga.*, 604, 606; 39 *Ib.*, 41.

But the law in regard to a married woman, and all her rights and disabilities, has undergone a complete revolution in this state since the act of 1866, which, in fact and as to all her property, makes her a *feme sole*, almost in every respect as if she never had been married, so far as property is concerned. Code, 1754. And this enactment is now part of the constitution. Code 5087. " All property of the wife at the time of the marriage, and all property given to, inherited or acquired by her, shall remain her separate property and not be liable for the debts of her husband," is now the sweeping provision of our fundamental law.

Still, by virtue of section 1783 of the Code, it is insisted by defendant in error that she cannot become surety for anybody. That section is : " The wife is a *feme sole*, unless controlled by the settlement. Every restriction upon her power in it must be complied with; but while the wife may contract, she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband, in extinguishment of his debts, shall be absolutely void."

Under this section, construed in connection with the act

of 1866 and the constitution, *in pari materia*, it has been held by this court that she cannot become a surety now, because the effect of the act of 1866, and of the constitutional provision, is simply to make all her acquisitions of property her separate estate, and they all stand on the same footing as a separate estate, settled without restrictions on her powers in the face of the settlement; and by the Code, section 1783, even when a settlement was unrestricted, she could not become surety at all.

The question then recurs, how is a *bona fide* holder affected by her plea that she signed the note as surety? Is it a nullity as to him, or can he collect it from her out of her own property? In the case of *Perkins vs. Rowland*, decided at the September term, 1882,* this court held that, "while a wife cannot legally assume a debt of her husband, yet where she has given a negotiable note for his debt, and it has been transferred to a *bona fide* purchaser for value before due, and without notice, it is valid and binds her. Therefore, when suit was brought by a third party, to whom such a note had been transferred, to foreclose a mortgage given to secure it, a plea to the effect that the note was given by the wife for the debt of her husband, but which did not allege that the plaintiff had received the note after maturity, or with notice, was fatally defective."

The principle there decided, we think, covers the point now under consideration here. By the Code, section 1783, the contract of the wife to pay the debt of the husband, and the sale of her property to that end, is as illegal and void as is any contract of suretyship made by her. If, then, a negotiable note, given by her to pay the debt of the husband, be good in the hands of a *bona fide* holder, why is not a negotiable note, given by her to secure the debt of her son, equally good in the hands of an innocent holder? We fail to see any distinction between the two cases. By the common law, let it be borne in mind, a married woman could not make a negotiable note. By the

* 69 *Ga*, 661.

laws of Georgia now, she may make such a paper, but not to pay her husband's debt, or as surety for another. Inasmuch as she may make it and put it in circulation without regard to her coverture under the laws of this state, when she does so put it in circulation and makes it negotiable, payable at any bank in Augusta, to the order of the payee, who indorses it to the plaintiff, before due, the plaintiff taking it for value, as collateral security for money loaned, is legally entitled to recover the amount of the notes from her estate, if she has any which can be reached by a common law judgment. She put in circulation a bankable, negotiable paper, not as surety, but as joint maker, and between loss by herself and an innocent holder of this paper, justice, as well as law, would put the loss occasioned by the default or rascality of the payee on her, rather than on him.

To show how far this court, in its construction of the woman's law of 1866, has untied her hands and freed her from the conjugal merger in the husband, see 44 *Ga.*, 541–3; 48 *Ib.*, 554, 561; 39 *Ib.*, 41; 51 *Ib.*, 147; 55 *Ib.*, 406–9; 56 *Ib.*, 344; 61 *Ib.*, 512; 62 *Ib.*, 733; 65 *Ib.*, 571.

Judgment reversed.