WARE *v.* MOBLEY *et al.*

No. 13278.   MAY 15, 1940.

250

*Hugh E. Combs* and *Carroll D. Colley,* for plaintiff.
*Clement E. Sutton,* for defendants.

GRICE, Justice. ■ In the amended motion for new trial it is complained that the judge charged the jury as follows: "I charge you that if an infant, knowing the consequences of his act, places title in one, relying upon that person to deliver a consideration, and the person fails to do so, but conveys the title so acquired to an innocent person, I charge you that title so conveyed as to the innocent purchaser for value would be good as against the plaintiffs. In that connection I charge you that where the plaintiffs, if such should be the case, conveyed this property to their brother, and they knowingly permitted that brother to use the property to obtain credit, why in that event I charge you that they would be bound." The attack on the first part of this excerpt is that it is not a sound proposition of law; and on the second part, that there is no evidence to justify the instruction that if the plaintiffs knowingly permitted their brother to use the property to obtain credit, they would be bound. We will first deal with the innocent-purchaser feature of the charge. *Howard* v. *Simpkins,* 70 *Ga.* 322, was a suit on a promissory note in the hands of an innocent purchaser. One of the defenses was the minority of the maker. The insistence there was that a plea of infancy was not good as against an innocent purchaser, the court's decision being placed on the ground that

such a plea goes to the capacity to contract. It cited, among other authorities, Code of 1873, § 2731, declaring that the contracts of an infant under twenty-one years of age are void except for necessaries, etc. The same language was carried forward in subsequent Codes. In the Code of 1933, § 20-201, the word "void" is changed to "voidable," and counsel for the defendant insists that for that reason a rule different from that announced in *Howard* v. *Simpkins* is to be applied. The argument, however, loses force when it is remembered that at the time the decision referred to was rendered this court, beginning with *Strain* v. *Wright, 7 Ga.* 568, had held that the contracts of infants are not void, but voidable at the election of the infant when arriving at full age. In *Nathans* v. *Arkwright, 66 Ga.* 179, the ruling was that the deed of an infant is voidable, not void. So that we conclude that the law as decided in *Howard* v. *Simpkins* was unaffected by the fact that the codifiers of the Code of 1933 used the word "voidable" instead of "void." It was held in *Merritt* v. *Jowers, 184 Ga.* 762 (193 S. E. 238), that Code § 20-201, which declares that generally the contract of an infant is voidable, and § 29-106, which contains the declaration that the deed of an infant is voidable at his pleasure on majority, should be construed in pari materia. In 14 R. C. L., § 23, it is stated that "It has frequently been declared that the right of an infant to avoid his contract is an absolute and paramount right, superior to all equities of other persons, and may therefore be exercised against purchasers from the grantee, although they bought bona fide and without knowledge that their title came through an infant." Supporting the text are the following cases: Harrod *v.* Myers, 21 Ark. 592 (76 Am. D. 409) ; Hovey *v.* Hobson, 53 Me. 451 (89 Am. D. 705) ; McMorris *v.* Webb, 17 S. C. 558 (43 Am. R. 629) ; Searcy *v.* Hunter, 81 Tex. 644 (17 S. W. 372, 26 Am. St. R. 837) ; Mustard *v.* Wohlford, 15 Grat. (Va.) 329 (76 Am. D. 599). In 31 C. J. 1019, it is said that "The right of avoidance is superior to all equities of other persons, and may therefore be exercised against, or regardless of the existence of, a bona fide purchaser or mortgagee." The principle there announced is supported by a large number of authorities. See Brewster *v.* Weston, 235 Mass. 14 (126 N. E. 271) ; Brantley *v.* Wolf, 60 Miss. 420; Conn *v.* Boutwell, 101 Miss. 353 (58 So. 105) ; Rowe *v.* Allison, 87 Ark. 206 (112 S. W. 395) ; Buchanan *v.* Hubbard. 96 Ind. 1;

252

Sims *v.* Smith, 86 Ind. 577; Miles *v.* Lingerman, 24 Ind. 385; Foster *v.* Williams, 182 N. C. 632 (109 S. E. 834) ; Jackson *v.* Beard, 162 N. C. 105 (78 S. E. 6) ; Oneida County Savings Bank *v.* Saunders, 179 App. Div. 282 (166 N. Y. Supp. 280). In line with the reasoning of *Howard* v. *Simpkins,* supra, it was observed in Conn *v.* Boutwell, 101 Miss. 353, 358 (58 So. 105), that "The principle upon which the rule is based is that the bona fides of the purchaser can not supply the infant's want of capacity." That is a statement frequently found in the decisions of other jurisdictions. What efficacy would there be in a rule that an infant, on reaching majority, could disaffirm a deed made by him during infancy, if the right could be circumvented by his grantee placing the legal title in a third person for value and without notice? In order to give vitality to the doctrine that an infant is incapable of irretrievably alienating his property, it is necessary to hold that he can pursue his rights even as against an innocent purchaser. The court erred in instructing the jury to the contrary.

■ The next criticism is that the judge charged the jury that if the plaintiffs conveyed this property to their brother, and they knowingly permitted that brother to use the property to obtain credit, they would be bound. Closely connected with this portion of the charge was another excerpt, complained of in ground 4 of the motion, to wit: "I charge you that if you believe that this property was so used with the knowledge of the plaintiffs in this case to obtain credit, and that credit was obtained with their knowledge, they would be bound by their deed." This charge may be a sound proposition of law in the abstract, on the theory of estoppel (*Hood* v. *Duren,* 33 *Ga. App.* 203, 125 S. E. 787, and cit.), but we find nothing in the record to justify it. On the contrary the plaintiff as a witness testified: "The first time I knew he had given a security deed to the property to Thomson Mercantile Company was when I saw the property advertised in the News-Reporter. . . I did not know anything about his having bought goods from Thomson Mercantile Company or giving them this security deed to obtain credit. No one ever mentioned anything of the kind to me, and the first I knew of the existence of this security deed was when I saw the advertisement of the property for sale." There is in the record no fact or circumstance that indicates that the minor had any knowledge that his brother desired the deed in order to use it to

obtain credit. This criticism of the charge was well founded. It was harmful to the plaintiff.

■ Counsel for the defendants insists, as an additional reason why a new trial should not be granted, that the plaintiff on attaining his majority ratified the act of making the deed. This insistence is based on the following testimony of the plaintiff: "I was twenty-one years of age in February, 1939. I went to him [his brother, his grantee] after February, 1939, several times, and tried to get him to pay me. I knew he had not paid me. . . I was still willing, after February, 1939, to let the deed stand if they paid me the $100. This was all I considered my interest worth." Other portions of the uncontroverted testimony show that his brother promised to pay him a hundred dollars as consideration for his interest in the property represented by the deed, but that he had never done so. The most that could be said of this is that the plaintiff expressed a willingness, after reaching majority, to ratify a deed made by him during minority, provided he received the promised consideration. There is no contention that the space of time between February, 1939, when he became of age, and May 2, 1939, the date of filing of the suit, was unreasonable delay on his part to exercise his right to disaffirm the conveyance made by him when a minor. It affirmatively appears that he received no consideration for his deed; so we have no question of his retaining benefits received, while at the same time seeking to disaffirm. No ratification was shown.

■ Since the judgment must be reversed in view of the errors pointed out above, and the evidence on the next trial may not be the same, no ruling is made on the general grounds. If, however, on the next trial the evidence is substantially the same on the issue now before the court, the plaintiff will be entitled to a verdict and decree in his favor. *Judgment reversed. All the Justices concur.*