RAYMOND PAE, ALSO KNOWN AS KEALOHAKA-
LANI LIU *v.* RUTH LEHUA STEVENS, SAMUEL
STEVENS, ALSO KNOWN AS BOYD STEVENS,
AND KAM TAI LEE, TREASURER OF THE TER-
RITORY OF HAWAII.

No. 3025.

ARGUED JUNE 24, 1958.                    DECIDED JULY 28, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This case is before us for further consideration upon
remand from the United States Court of Appeals for the
Ninth Circuit.

The facts are set forth in the opinion reported in 41
Haw. 490. Plaintiff appealed to the Court of Appeals from

the judgment entered pursuant to that opinion. The Court of Appeals considered that the result and the reasoning of this court were in manifest error. However, it did not reverse the judgment but remanded the case for further consideration in the light of its opinion. In remanding the case, it stated that "it may be that the Hawaiian courts may be able to clarify the position or to cite some decision of the past or call attention to local customs which vary the principles of the common law which appear to this Court applicable on the record before us."

Plaintiff instituted this action against the treasurer of the Territory of Hawaii in order to recover compensation for deprivation of his interest in registered land allegedly resulting from the negligence of the examiner of title appointed in the proceeding for registration. The alleged negligence was the failure of the examiner to discover plaintiff's age, which was 19 years at the time of the filing of the application for registration and at the time of the entry of the decree of registration.

The court affirmed the judgment of the circuit court, which denied recovery to the plaintiff, on two grounds, first, that the plaintiff was not without negligence, and, second, that the plaintiff had not exhausted his right of action or other remedy for the recovery of his interest. Plaintiff proceeded under R.L.H. 1935, §§ 5098 to 5103 (R.L.H. 1955, §§ 342-98 to 342-103). Under R.L.H. 1935, § 5099 (R.L.H. 1955, § 342-99) want of negligence on the part of the plaintiff and exhaustion of right of action or other remedy for the recovery of the land are prerequisites to recovery of compensation. That section provides: "Any person who, without negligence on his part, sustains loss or damage, or is deprived of land or of any estate or interest therein, after the original registration of land under this chapter, by the registration of any other person as owner of such land, or of any estate or interest therein,

through fraud, or in consequence of any error, omission, mistake or misdescription in any certificate of title or in any entry of memorandum in the registration book, may bring and prosecute an action of contract in the circuit court for the recovery of compensation for such loss or damage or for such land or estate, or interest therein; provided, however, that when the person deprived of land or of any estate, or interest therein, in the manner above stated, has a right of action or other remedy for the recovery of the land or of the estate, or interest therein, he shall exhaust the right of action or other remedy before resorting to the action of contract herein provided; * * * "

With regard to the first ground, it is the opinion of the Court of Appeals that negligence may not be attributed to the plaintiff because he was a minor at the times that the acts resulting in the loss of his interest took place. We acquiesce in that opinion. There is no prior decision of this court or local custom which varies the principles of the common law relating to the protection of minors in contractual relations.

With regard to the second ground, it is the opinion of the Court of Appeals that the plaintiff had no right of action or other remedy for the recovery of his interest unless he could prove that Jordan Freitas and Carrie Freitas, who purchased the land, were not bona fide purchasers for value without notice; that there was not a scintilla of evidence that the Freitases were not such bona fide purchasers; that the discrepancy between the fair market value of the land which was stipulated to be $14,000, and the price of $5,750 at which it was sold was not a sufficient circumstance to impeach the good faith of the Freitases; and that the statutory requirement of exhaustion of a right of action or other remedy for the recovery of the land laid only a basis for an affirmative defense.

The position of this court with regard to the second

ground remains unchanged. It is that the statutory requirement of exhaustion of a right of action or other remedy for the recovery of his interest is a condition precedent to plaintiff's right to recover compensation in the instant action and that the plaintiff failed to meet that condition precedent.

This action, insofar as it seeks a judgment against the treasurer of the Territory of Hawaii, is in effect an action against the Territory, for any judgment in the action against the treasurer is payable out of the general fund of the Territory. (R.L.H. 1935, § 5101; R.L.H. 1955, § 342-101) In this respect, it is similar to an action against the commissioner of internal revenue for refund of taxes illegally assessed under the Federal tax laws.

*Rock Island, Arkansas & Louisiana Railroad Company v. United States,* 254 U. S. 141, involved an appeal from a judgment of the Court of Claims dismissing a petition for refund of tax on the ground that the claimant had not complied with a condition imposed by statute. The statute provided that no suit shall be maintained in any court for the recovery of any tax alleged to have been illegally assessed "until appeal shall have been duly made to the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of the Commissioner has been had therein." Regulations of the Secretary required the filing of an application for abatement of taxes and an application for refund with the commissioner. Claimant filed the application for abatement but not the application for refund. He took the position that the filing of an application for refund, after the rejection of the application for abatement, was an idle act. In affirming the judgment of the Court of Claims, the Supreme Court of the United States stated: "Men must turn square corners when they deal with the Government.

If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with. *Lex non praecipit inutilia* (Co. Lit. 127b) expresses rather an ideal than an accomplished fact. But in this case we cannot pronounce the second appeal a mere form. On appeal a judge sometimes concurs in a reversal of his decision below. It is possible as suggested by the Court of Claims that the second appeal may be heard by a different person. At all events the words are there in the statute and the regulations, and the Court is of opinion that they mark the conditions of the claimant's right."

In this case, the plaintiff completely ignored the statutory requirement. He did not even offer the excuse that an action to recover his interest would have been futile. He brought the action for the recovery of compensation merely as a substitute for an action for the recovery of his interest. That is evident from the very face of the complaint. The last paragraph of the complaint contains the following allegation:

"This action is brought under Section 5100, and also sections 5098, 5099, 5101, 5102 and 5103 of the Revised Laws of Hawaii, 1935, to provide compensation for loss or damage or deprivation of land or interest therein to parties such as plaintiff above named *as he would otherwise have brought a common law action of the recovery of the possession of the above described properties* against defendant, Ruth Lehua Stevens and her privies, for the reason that the minor could repudiate and disaffirm the acts of the agent during his minority when the minor reached majority as it was done by the plaintiff in disaffirming the acts of his agent, Ruth Lehua Stevens." (Emphasis supplied)

Plaintiff also stipulated that he "has not brought any action in any court for the purpose of canceling or rescinding or attempting to cancel or rescind either the deed or

Transfer Certificate of Title No. 21247 to Jordan Freitas and Carrie Freitas."

We think that, if the plaintiff had brought an action against the Freitases for the recovery of his interest in the land, that would not have been an idle proceeding. In making this statement, we assume that the Freitases were bona fide purchasers for value without notice.

Upon reaching the age of majority and learning about the sale of the land to the Freitases, the plaintiff executed and recorded in the Bureau of Conveyances a document entitled "RESCISSION OF POWER OF ATTORNEY," wherein he revoked the power of attorney previously given to Mrs. Stevens and disaffirmed all acts done thereunder. The revocation and disaffirmance were in the following words: "I hereby repudiate and rescind said power of attorney and every power and authority therein contained and further repudiate and rescind and disaffirm all acts and things performed by my said attorney, RUTH LEHUA STEVENS."

If the rescission of power of attorney were efficacious in disaffirming any and all acts of Mrs. Stevens, as it purported to do, it would have rendered the registration of plaintiff's interest a nullity. If the registration were rendered a nullity, plaintiff's interest would revert to the status of an interest in unregistered land. The law in this jurisdiction with regard to unregistered land is that a person may disaffirm a conveyance made during his minority within a reasonable time after reaching his majority and recover the land even as against bona fide purchasers for value without notice, immediate or remote. (*McCandless* v. *Lansing,* 19 Haw. 474; *Jellings* v. *Pioneer Mill Co.,* 30 Haw. 185) Hawaii is not unique in this respect. (*Ware* v. *Mobley,* 190 Ga. 249; 9 S. E. [2d] 67; *Elkhorn Coal Corporation* v. *Tackett,* 261 Ky. 795, 88 S. W. [2d] 943) Plaintiff agrees that such is the law. But he contends

that his interest was an interest in registered land and that the mentioned legal principle does not apply to registered land.

The Court of Appeals has intimated a doubt as to the validity of the registration of plaintiff's interest. Reference is made to the following statement of the Court of Appeals: "A minor has no standing to bring or prosecute the proceeding for land registration in his own name. Raymond Pae could not even file an application unless a legally appointed guardian appeared on his behalf. Similarly, neither Samuel Stevens nor Ruth Lehua Stevens, by virtue of the power of attorney, had authority to bring such an action. Thus there was no apparent authority for filing this action at all. This consideration might affect the jurisdiction of the court over Pae."

Plaintiff's contention is partially correct if we assume that his interest was an interest in registered land. The principle does not apply to registered land to the full extent that it does to unregistered land. It does not apply to remote bona fide purchasers of registered land. But we think that it applies to immediate purchasers of registered land, as were the Freitases, and that in a proceeding against such purchasers their good faith is immaterial.

The leading case on the point is *Gibbs* v. *Messer*, (1891) A. C. 248, decided by the Privy Council on appeal from the Supreme Court of Victoria. The question on appeal, as stated in the report, was as follows: "The question in the appeal stated from the appellant's point of view was whether, according to the true construction of the Transfer of Land Statute (Act No. 301), a registered proprietor of land can be said to have been deprived of land within the meaning of sect. 144, and consequently to have become entitled to compensation out of the assurance fund by reason of a transfer from him to a non-existent person under a fictitious name having been forged, and by reason

of such fictitious name having been substituted for his on the register as the proprietor, and by reason of a forged mortgage from such fictitious person to a registered mortgagee who had bona fide advanced money on the security of such land." The Privy Council held that the registered owner was not entitled to compensation out of the assurance fund because he was not deprived of his land, and ordered the land restored to the registered owner free and clear of the mortgage. It stated:

"The main object of the Act, and the legislative scheme for the attainment of that object, appear to them to be equally plain. The object is to save persons dealing with registered proprietors from the trouble and expense of going behind the register, in order to investigate the history of their author's title, and to satisfy themselves of its validity. That end is accomplished by providing that every one who purchases, in bona fide and for value, from a registered proprietor, and enters his deed of transfer or mortgage on the register, shall thereby acquire an indefeasible right, notwithstanding the infirmity of his author's title. * * * The protection which the statute gives to persons transacting on the faith of the register is, by its terms, limited to those who actually deal with and derive right from a proprietor whose name is upon the register. Those who deal, not with the registered proprietor, but with a forger who uses his name, do not transact on the faith of the register; and they cannot by registration of a forged deed acquire a valid title in their own person, although the fact of their being registered will enable them to pass a valid right to third parties who purchase from them in good faith and for onerous consideration.

* * * * *

"Although a forged transfer or mortgage, which is

void at common law, will, when duly entered on the register, become the root of a valid title, in a bona fide purchaser by force of the statute, there is no enactment which makes indefeasible the registered right of the transferee or mortgagee under a null deed. * * * In the opinion of their Lordships, the duty of ascertaining the identity of the principal for whom an agent professes to act with the person who stands on the register as proprietor, and of seeing that they get a genuine deed executed by that principal, rests with the mortgagees themselves; and if they accept a forgery they must bear the consequences."

Thus, the case announced the principle that the title of a grantee of registered land under a defective conveyance is not indefeasible, although such conveyance may become the root of an indefeasible title in a subsequent bona fide purchaser for value without notice. That case was decided upon the statute of Victoria. We see nothing in our statutes to vary the principle. Nor do we see any difference in the application of the principle in the fact that defect in the conveyance there resulted from forgery and the defect here arises by reason of want of legal capacity.

In Niblack, *An Analysis of the Torrens System of Conveying Land,* at page 201, the following statement is made on the basis of *Gibbs* v. *Messer:*

"A person about to deal with a registered title, and about to be registered as a new owner of an estate or interest in land, must ascertain at his own peril the existence and identity of the registered owner under whom he is to be registered, the authority of any person to act for him, and the validity of the transfer under which he is to claim. It follows that a person must show that he is registered under the last real registered owner, or he will not be protected by the register. The underlying principle is that, by the registration of

a person as the owner of a certain estate or interest in land, the records of a public office are made to certify that such person has the title as registered, and, as against a registered purchaser in good faith for value from such person, there should be an estoppel to deny that fact. But the instrument purporting to deal with the land is primarily accepted by the purchaser or mortgagee, and not by the registrar, the public officer, and there is no reason why he should not have the burden of ascertaining the existence and identity of the registered owner under whom he is to be registered, and the validity of the transfer to him. It is plainly his duty to see that he is taking from one who is on the list of registered owners, and, before he tenders the instrument of transfer to the officer for registration, he must know that it is valid in all respects."

In this case, the certificate of title issued to the plaintiff stated a good title. The Freitases bargained for that title. They did not obtain what they bargained for because the instrument of conveyance was defective, not because the title stated in the certificate was defective. The burden of obtaining an indefeasible conveyance by an appropriate deed was upon the Freitases. The fact that the certificate of title did not contain a notation of plaintiff's age did not make the conveyance the act of a person of full capacity. Absence of notation of age in the certificate did not mean that there was an adjudication that the plaintiff was of legal age. The land court is a court of limited jurisdiction to adjudicate questions of title to property. It has no jurisdiction over questions of personal status.

Thus, in our opinion, the plaintiff had the right to disaffirm the conveyance to the Freitases and recover his interest, even if such interest was an interest in registered land.

Judgment of the circuit court is affirmed.

*Wai Yuen Char* (also on the brief) for plaintiff-appellant.

*Henry H. Shigekane,* Deputy Attorney General (*Herbert Y. C. Choy,* Attorney General, with him on the brief) for Kam Tai Lee, Treasurer of the Territory of Hawaii, defendant-appellee.