SIMS *v.* EVERHARDT.

1. An infant *feme covert*, to whom lands in Indiana were conveyed, executed with her husband, May 20, 1847, a deed in fee therefor, for a valuable consideration paid by the grantee to him. She was, on her petition, divorced from him, Feb. 14, 1870. Within less than two months thereafter she gave due notice of her disaffirmance of the deed, and demanded possession of the lands, which was refused. She thereupon brought suit. *Held,* that, as she did nothing during her coverture to confirm the deed, her notice and suit avoided it.
2. An estoppel *in pais* not being applicable to an infant, she was not estopped from alleging her infancy, by any declaration which, at the time of executing the deed, she made in regard to her age.

APPEAL from the Circuit Court of the United States for the District of Indiana.

This case shows that the complainant was married July 14, 1844, to John B. Sims. She was then a minor less than seventeen years old, having been born Sept. 25, 1828. Her father, April 3, 1845, conveyed to her in fee the tract of land in controversy, and, May 28, 1847, she, joining with her husband, executed a deed therefor to Magdalena Everhardt. The deed, subscribed by her and her husband in the presence of a magistrate, was acknowledged in due form, and the purchase-money paid. Mrs. Everhardt went into immediate possession, paid a mortgage upon the property, paid taxes, continued in possession, and made improvements until her death in 1871. The defendants are her devisees.

When the deed was made, some doubts appear to have been entertained upon the question whether the complainant was then of full age, and to remove them she signed the following statement, which was written on the deed: —

"The above-mentioned Ann M. Sims, before the delivery of the above deed, and before the payment of the above money or any part thereof, voluntarily, and as an inducement to the said Everhardt to consummate the bargain, accept the deed, &c., states and declares that she was twenty-one years of age on the twenty-fifth day of September, A.D. 1846. Signed May 28, 1847, in presence of Sam'l E. Williams.

"ANN M. SIMS."

There is evidence that early in her married life, before the deed was made, she received very ill treatment from her husband; that he insisted upon her selling the place; that he employed threats; that she became afraid of him; that a look from him would make her do almost anything; and that she knew nothing of any arrangement to sell the property until the deed was brought for her to sign in her own house.

On the fourteenth day of February, 1870, the complainant was divorced from her husband, for his own fault. In the month of March next following, or early in April, she disaffirmed her deed to Mrs. Everhardt and demanded possession of the land. Her demand not having been complied with, this suit was brought to set aside the deed, and for an account of the rents and profits of the land, as well as of the amount she is in duty bound to pay to the defendants on account of the purchase-money paid by the grantee, and the mortgage aforesaid.

The other facts are stated in the opinion of the court. The Circuit Court, upon a final hearing, dismissed the bill. The complainant appealed.

When the deed was executed, the Revised Statutes of 1843 were in force in Indiana. Art. 2, c. 28, contains the following provisions: —

"SECT. 1. Every citizen of the United States is capable of holding lands within this State, and of taking the same by descent, devise, or purchase.

" Sect. 2. Every person capable of holding lands, who may be seised of or entitled to any estate or interest in lands, except idiots, persons of unsound mind and infants, may alien such estate or interest at his pleasure, with the effect and subject to the restrictions and regulations provided by law."

" Sect. 17. The joint deed of the husband and wife, upon complying with the provisions of the fortieth section of this chapter, shall be sufficient to convey and pass the real estate of the wife, but not to bind her to any covenant or estoppel therein."

" Sect. 40. The acknowledgment of the execution of any deed or conveyance by which a married woman releases and relinquishes her dower in any lands conveyed, granted, or assigned by her husband, or by which the husband and wife convey the real estate of the wife, may be taken before any officer herein authorized to take the acknowledgment of deeds, but such acknowledgment shall not be taken by such officer unless he shall first make known to her the contents or purport of such deed or conveyance, and she acknowledge, on a private examination, separate and apart from, and without the hearing of, her husband, that she executed such deed or conveyance of her own free will and accord, and without any coercion or compulsion from her husband, all of which shall be certified by such officer in his certificate of such acknowledgment.

" Sect. 41. Any married woman over the age of eighteen years, and under the age of twenty-one years, may release and relinquish her right to dower in any lands of her husband, sold and conveyed by him, by executing, and acknowledging the execution of, such conveyance, as provided in the last preceding section, if the father or guardian of such married woman shall declare, before the officer taking such acknowledgment, that he believes that such release and relinquishment of dower is for the benefit of such married woman, and that it would be prejudicial to her and her husband to be prevented from disposing of the lands thus conveyed, which declaration, with the name of such father or guardian, shall be inserted as a part of the certificate of the officer taking such acknowledgment."

*Mr. William H. Calkins* and *Mr. Edwin B. Smith* in support of the decree below.

1. The deed of an infant is merely voidable, and not void, although the grantor be a *feme covert.* This is the rule at common law. *Zouch* v. *Parsons,* 3 Burr. 1794. It has been recognized in this court and in the several States. *Tucker* v.

*Moreland,* 10 Pet. 58; *Irvine* v. *Irvine,* 9 Wall. 617; 3 Washburn on Real Prop. 559, note 6, citing *Phillips* v. *Green,* 3 A. K. Mar. (Ky.) 11; *Webb* v. *Hall,* 35 Me. 336; and many other cases. It has been repeatedly so declared by the Supreme Court of Indiana. *Doe* v. *Abernathy,* 7 Blackf. (Ind.) 442; *Hartman* v. *Kendall,* 4 Ind. 403; *Pitcher* v. *Laycock,* 7 id. 398; *Johnson* v. *Rockwell,* 12 id. 77; *Chapman* v. *Chapman,* 13 id. 396; *Miles* v. *Lingerman,* 24 id. 385; *Law* v. *Long,* 41 id. 586; and *Scranton* v. *Stewart et al.,* 52 id. 68. The last case fully disposes of every issue in this record, and led to the decree from which this appeal was taken. It has not been overruled or qualified by any later case.

In the absence of any decision by that court, we should suppose the deed of an infant *feme covert,* in which her husband joined, to be good and effective. By marriage, guardianship is terminated. This common-law rule has been declared expressly by statute in Indiana. The Revised Statutes of 1843, sect. 102, c. 35, enact that " the marriage of any female, under guardianship as a minor, to any person of full age, shall operate as a legal discharge of her guardianship, *in like manner as if she had arrived at full age.*" The act of June 9, 1852, sect. 12, c. 4, omits the words italicized, and adds: " And her guardian shall account to the husband of the ward in the same manner as if she had arrived at full age." The Supreme Court of Indiana holds that the guardianship being thus terminated, an infant married to a man of full age can have no guardian. *State* v. *Joest,* 46 Ind. 235; *Ex parte Post,* 47 id. 142. The husband takes the place of the guardian, and the Revised Statutes of 1843, sect. 17, c. 28, art. 2, would seem to empower a married woman of any age to unite with him in making title. It has, however, been held that the section merely authorizes a minor wife to join in a conveyance which might be avoided by her within a reasonable time after attaining her majority. *Scranton* v. *Stewart et al., supra.*

2. The deed being only voidable, Mrs. Sims, if she desired to avoid it, was bound to do so, within a reasonable time after becoming of age; and a period of twenty-one years is not a reasonable time. *Hartman* v. *Kendall,* 4 id. 403; *Law* v. *Long,* 41 id. 599, citing numerous cases, especially *Bool* v. *Mix,*

17 Wend. (N. Y.) 119; *Scranton* v. *Stewart et al.*, *supra*, and cases there cited. Some positive act of disaffirmance is required; silence is affirmance. See above cases, and also *Doe* v. *Abernathy*, 7 Blackf. (Ind.) 442; *Babcock* v. *Bowman*, 8 Ind. 110; *Dearborn* v. *Eastman*, 4 N. H. 441; *Robbins* v. *Eaton*, 10 id. 561; *Emmons* v. *Murray*, 16 id. 385; *Wallace* v. *Lewis*, 4 Harr. (Del.) 75; *Hastings* v. *Dollarhide*, 24 Cal. 195. These cases held that such act of disaffirmance must be done within a reasonable time. *Irvine* v. *Irvine* (9 Wall. 617) calls four years a long time. That period was held sufficient evidence of ratification in *Wallace* v. *Lewis*, *supra;* so was six years in New Hampshire, 10 N. H. 561; 16 N. H. 385; and nine years in New York, 11 Johns. (N. Y.) 539; *Richardson* v. *Boright*, 9 Vt. 368, 371; *Kline* v. *Beebe*, 6 Conn. 494; *Wheaton* v. *East*, 5 Yerg. (Tenn.) 41. *Hartman* v. *Kendall* (4 Ind. 403) declares thirteen years to be an unreasonable delay. These decisions also declare that the question as to what constitutes reasonable time must be determined by the peculiar circumstances of each case.

In this connection we rely upon the statement of Mrs. Sims, subjoined to the deed. We never supposed that she could make her deed effective by merely averring capacity; but the deliberate averment of a fact known to her, but not to her grantee, must operate to shorten the period within which it would be reasonable to permit her to avoid her deed by proof of a different state of things from that so averred. The fact that after 1852 she *might* have brought suit without joining her husband is also an element to be considered. Even if not bound to *sue* while covert, she was bound to disaffirm. Disaffirmance is a preliminary act: a fact vital to be proved and to be seasonably performed. The time for its performance will not be extended by delaying the suit. *Bool* v. *Mix, supra.* As the consideration was obtained by her false pretences, it might well be held that she would be barred by an acquiescence extending throughout the time within which she would have been liable to indictment therefor. Neither in civil nor criminal procedure is it a conclusive presumption that a woman acts under the coercion of her husband. The facts in this case rebut that presumption.

The fact of coverture does not excuse an act of positive fraud, such as her signing the false statement appended to the deed. While the law of Indiana gives to married women rights superior to those which they enjoy in some of the other States, it does not release them from the obligations of good faith and common honesty. In *Litchenberger* v. *Graham* (50 Ind. 290), the silence of a woman was held to be a ratification of her husband's sale of her personal property. *A fortiori*, then, will active participation in his fraud greatly shorten the time for disaffirmance, if it does not estop her altogether from repudiating the contract. *Gatling* v. *Rodman*, 6 id. 289; *Barnes* v. *McKay*, 7 id. 301.

3. This is a bill in chancery, brought upon the assumption that the deed was void *ab initio*. Assuming that the title is and always has been in the complainant, it seeks merely to remove therefrom a cloud caused by an alleged fraudulent conspiracy against her, in which the deceased grantee was a participant. Such is the equity which she sets out to establish. It finds no support in the evidence nor warrant in the law as it is expounded and enforced in Indiana.

Since 1852, a married woman's real estate in Indiana has been her separate property.

Mrs. Sims was thereafter, if not before, empowered to file her bill in the Federal or the State court, and make her husband a defendant. This is in addition to and entirely distinct from the right to sue at law given by the State statute. It is incident to chancery jurisdiction, and her failure to resort to it in due time is such laches as will bar her recovery now.

4. Though the chancery *power* of the Federal courts cannot be conferred or restrained by State legislation, yet in exercising it this court will recognize the rules of property established by such legislation, and construe a contract accordingly. *Fairfield* v. *County of Gallatin*, 100 U. S. 47.

Under the statute of Indiana the deed in question was neither void nor absolutely and unconditionally voidable. It passed the present title upon delivery, and became unimpeachable, unless avoided within a reasonable time. Though Mrs. Sims's declaration could not operate to bar a seasonable action of ejectment, it may be held an estoppel in these proceedings.

Bispham, Principles of Equity, 293 ; 2 Story, Eq. Jur., c. 44, especially sect. 1545, and cases there cited.

. *Mr. Arthur D Rich, contra.*

MR. JUSTICE STRONG, after stating the case, delivered the opinion of the court.

Assuming, as we think it must be assumed, and as it is certainly held in Indiana, that the deed of Mrs. Sims, in which her husband joined, though made during her minority, was not void as against her, but only voidable, and hence that it was incumbent upon her to disaffirm it within a reasonable time after she came of age, the inquiry is still to be met, What was a reasonable time under the circumstances of the case ? She gave notice of her disaffirmance almost immediately after she became *discovert*, — certainly within less than two months. This was, however, a little more than twenty years after she attained her majority. ·

The Circuit Court dismissed the complainant's bill for the reason that it did not appear she had disaffirmed the deed of May 28, 1847, within a reasonable time after the attainment of her majority, being of opinion that the rule was established in Indiana she must have so disaffirmed it, notwithstanding her coverture ; that is, in the same time as if she had been *discovert*.

We find no decision of the Indiana courts that ought to be regarded as establishing that rule. The case relied upon by the appellees in support of the judgment of the Circuit Court is *Scranton v. Stewart*, 52 Ind. 68. The facts of that case, it must be admitted, were in some respects like those of the present, though in others essentially different. The plaintiff was at the time of her marriage an infant, aged sixteen. She was then seised in fee-simple of a tract of land, containing forty-five acres, and also of an undivided interest in another tract. On the second day of March, 1864, when she was in the nineteenth year of her age, she and her husband conveyed the lands to one George W. Stewart, for a consideration of $2,500, a considerable part of which was paid. Mrs. Scranton came of age on the 12th of January, 1867, gave notice to Stewart of her disaffirmance of the deed on the 22d of July,

1870, and shortly after brought her action to recover the land. This was more than three years and a half after she had attained her majority. The Supreme Court held that her disaffirmance was in time. It was all the case required. But the judge went on to declare that a married woman who has made a deed of her lands during her infancy and coverture must disaffirm it within a reasonable time after she arrives at age, notwithstanding her coverture, and that the fact of the continued coverture would not extend the time for the disaffirmance. All this was *obiter*. It had nothing to do with the case before the court. Nothing in the facts or the judgment required the assertion of such a rule. And it is observable that it was said in a case in which it appeared the married woman was seised of her land before her marriage, and that she was married in 1864, after the statutes of the State had greatly enlarged the power of a *feme covert* over her property. Those statutes had given her the rights of a *feme sole* in regard to her lands, and empowered her to sue as such without joining her husband. They had denied to a husband the rights which at common law he acquired in the wife's property by the marriage. They had made her lands and the profits of them her separate property, as fully as if she was unmarried, with the single exception that she could not incumber or convey them except by deed in which her husband should join. The effect of the State statute, touching the marriage relation and the liabilities incident thereto, was in part considered in *Miles* v. *Lingerman* (24 id. 385), where it was said by the Supreme Court of the State : " Under our present statute the wife may bring her action in regard to her own estate as though she were a *feme sole*. Still our legislature has seen proper to continue the protection formerly accorded to her as a *feme covert*, although as to her power to disaffirm her contracts made during minority her legal disability has been removed. She has the legal power to disaffirm her contracts made during infancy, and to bring her action without the assent, and even against the will, of her husband." This language, if not a positive assertion of its converse, contains at least a strong implication that her power to disaffirm a conveyance made by her during infancy did not exist at common law, or before the statutes of 1847 and 1852 were enacted.

We find nothing in any prior decision of the Indiana courts, that sustains what was said *obiter* in *Scranton* v. *Stewart*. *Law* v. *Long* (41 Ind. 586), to which reference has been made, decided that the deed of a minor, conveying her land for a valuable consideration, is voidable only and not void, and that the right to avoid it on coming of age is a personal privilege of the minor and her heirs. It also decided that when the act of an infant is executed, as when a deed has been made and delivered, the infant must, on attaining full age, do some act to disaffirm the contract, and that such act must precede the commencement of an action. But the case did not define what is a reasonable time, or rule that if the wife came of age during coverture she was bound to disaffirm the contract notwithstanding her coverture, as if she was a *feme sole*. In that case the conveyance was made by the wife and her husband before the act of 1852 was passed. He died in 1852. She married again in 1853, and came of age in 1854. Her second husband died in 1864, and she married a third time in 1868. It was not until after her third marriage that her suit was brought. She had been *discovert* during more than four years after her deed was made, and after she had reached her majority, and yet she had taken no step or done any act to disaffirm the deed prior to the institution of her suit. No intimation is given in the case that she was bound to disaffirm or could disaffirm during her coverture. Nothing, therefore, in *Law* v. *Long* supports what was said, but not decided, in *Scranton* v. *Stewart*.

But if the law was accurately stated in the opinion given by the court in *Scranton* v. *Stewart*, as applicable to a deed of her lands made by an infant *feme covert* after the statute of 1852, it by no means follows that it should rule the present case. There is a radical difference in the facts of the two cases. Mrs. Sims was married before the act of 1852 or that of 1847 was passed, and while the common law relative to the marriage relation existed. By the marriage her husband acquired a vested freehold interest in her lands, and became entitled to the rents and profits. His control over the usufruct thereof became absolute. His interest extended during their joint lives, or at least as long as the marriage relation continued. It was an interest capable of sale. When, therefore, the deed

was made to Mrs. Everhardt in 1846, it gave to the grantee the wife's right, subject to disaffirmance, and the husband's right to the possession and enjoyment of the profits absolutely. When the wife subsequently came of age, she continued powerless to disturb the possession of the grantee, as long as her coverture lasted; for the grantee held not only her right, but that also of her husband. The most she could have done was to give notice that she would not be bound by her deed. Was she required to do that? To answer the question it is important to keep in mind her condition at common law. The land was not her separate estate, such as the wife had in *Scranton* v. *Stewart.* In regard to it she was *sub potestate viri*, incapable of suing or making any contract without her husband's assent. She could not even receive a grant of land if her husband dissented. Her disability during her coverture was even greater than that of an infant, and it is settled that an infant cannot disaffirm his deed while his infancy continues. *Zouch* v. *Parsons*, 3 Burr. 1794; *Roof* v. *Stafford*, 7 Cow. (N.Y.) 179. The reason is that a disaffirmance works a reinvestiture of the estate in the infant, and he is presumed not to have sufficient discretion for that. Why should not the greater disability of coverture be attended with the same consequences? If a wife cannot contract about any land which is not her separate property, how can she, without the concurrence of her husband, do any act, the effect of which is to transfer the title to land from another to herself?

We are not, however, called upon by the exigencies of this case to decide that a wife cannot, during her coverture, disaffirm a deed which she made during her infancy. The question now is, whether Mrs. Sims did disaffirm her deed within a reasonable time after she attained her majority. What is a reasonable time is nowhere determined in such a manner as to furnish a rule applicable to all cases. The question must always be answered in view of the peculiar circumstances of each case. *State* v. *Plaisted*, 43 N. H. 413; *Jenkins* v. *Jenkins*, 12 Iowa, 195, and numerous other cases. It must be admitted that generally the disaffirmance must be within the period limited by the Statute of Limitations for bringing an action of ejectment. A much less time has in some cases been

held unreasonable. It is obvious that delay in some cases could have no justification, while in others it would be quite reasonable.

Now, in this case, though there was no disaffirmance for nearly twenty-one years after Mrs. Sims attained her majority, there were very remarkable reasons for the delay, sufficient, in our opinion, to excuse it. When the deed was made she was laboring under a double disability, — infancy and coverture. Even if her deed and that of her husband had not conveyed his marital right to the possession and enjoyment of the land, she would have been under no obligation, imposed by the Statute of Limitations, to sue until both the disabilities had ceased; that is, until after 1870. It is an acknowledged rule that when there are two or more coexisting disabilities in the same person when his right of action accrues, he is not obliged to act until the last is removed. 2 Sugden, Vendors, 103, 482; *Mercer's Lessee* v. *Selden,* 1 How. 37. This is the rule under the Statute of Limitations. But Mrs. Sims could not sue until after her divorce, and until the right the husband acquired by his marriage terminated. And had she given notice during her coverture of disaffirmance of her deed, it was in the power of her husband to disaffirm her disaffirmance. 2 Bishop, Married Women, sect. 392. Giving notice, therefore, which was all she could do, would have been a vain thing. The law does not compel the performance of things that are vain. Mr. Bishop, in his work to which we have referred, says that if an infant, who is also a married woman, makes an instrument voidable because of her infancy, the disability of coverture enables her to postpone the act of avoidance to a reasonable time after the coverture is ended. Sect. 516. In support of this he refers to *Dodd* v. *Benthal,* 4 Heisk. (Tenn.) 601, and *Matherson* v. *Davis,* 2 Coldw. (Tenn.) 443. These cases certainly sustain the rule stated in the text. In the former it was decided that an infant, who is also a married woman, has the option to dissent from her deed within a reasonable time after her discoverture, though her coverture may continue more than twenty years. And if this were not so, the disability of coverture, instead of being a protection to the wife, as the law intends it, would be the contrary. We have

found no decision that is in conflict with this doctrine, and no dicta even, except those in *Scranton v. Stewart*. And why should the rule not be thus? The person who takes a deed from an infant *feme covert* knows that she is not *sui juris*, and that she will be under the control of her husband while the coverture lasts. He is bound to know, also, that she has the disability of infancy. He assumes, therefore, the risk attending both those disabilities.

. But the continued coverture of Mrs. Sims, after she attained full age, is not the only circumstance of importance to the inquiry whether she disaffirmed her deed within a reasonable time. The circumstances under which the deed was made are to be considered. There is evidence that she was constrained by her husband to execute the deed; that his conduct toward her was abusive, violent, and threatening, in order to induce her to consent to the sale; that she was intimidated by him; that a look from him would make her do almost anything, and that she was in a weak and nervous condition. It is not strange that a woman bound to such a husband should delay during her coverture disaffirming a contract which he had forced her to make. ,

. Add to this, that she had very little opportunity to disaffirm until after her divorce. Before she had reached her majority she removed to another State, and never returned to the neighborhood of the property to reside. Between 1848 or 1849 and 1870 she made but two visits to Laporte, both on account of sickness or the death of a relative, and neither visit was prolonged beyond three days. It is not a case, therefore, of standing by after she came of age and seeing her property in the enjoyment of another.

And again, she never did any act after her deed was made and after she came of age expressive of her consent to it or implying an affirmance of the contract. The most that is alleged against her is that she was silent during her coverture. But silence is not necessarily acquiescence.

We are aware that the decisions respecting the disaffirmance of an infant's deed are not in entire harmony with each other. While it is generally agreed that the infant to avoid it must disaffirm it within a reasonable time after his major--

ity is attained, they differ as to what constitutes disaffirmance and as to the effect of mere silence. Where there is nothing more than silence, many cases hold that an infant's deed may be avoided at any time after his reaching majority until he is barred by the Statute of Limitations, and that silent acquiescence for any period less than the period of limitation is not a bar. Such was in effect the ruling in *Irvine* v. *Irvine*, 9 Wall. 617. See also *Prout* v. *Wiley* (28 Mich. 164), a well-considered case, and *Lessee of Drake* v. *Ramsey*, 5 Ohio, 251. But, on the other hand, there appears to be a greater number of cases which hold that silence during a much less period of time will be held to be a confirmation of the voidable deed. But they either rely upon *Holmes* v. *Blogg* (8 Taunt. 35), which was not a case of an infant's deed, or subsequent cases decided on its authority, or they rest in part upon other circumstances than mere silent acquiescence, such as standing by without speaking while the grantee has made valuable improvements, or making use of the consideration for the deed. We think the preponderance of authority is that, in deeds executed by infants, *mere* inertness or silence, continued for a period less than that prescribed by the Statute of Limitations, unless accompanied by affirmative acts, manifesting an intention to assent to the conveyance, will not bar the infant's right to avoid the deed. And those confirmatory acts must be voluntary. As we have said, one who is under a disability to make a contract cannot confirm one that is voidable, or, what is the same thing, cannot disaffirm it. An affirmance or a disaffirmance is in its nature a mental assent, and necessarily implies the action of a free mind, exempt from all constraint or disability.

In view of these considerations, our conclusion is that Mrs. Sims, the complainant, having been a *feme covert* until 1870, and never having done, during her coverture, any act to confirm the deed which she made during her infancy, could effectively disaffirm it in 1870, when she became a free agent, and that her notice of disaffirmance and her suit avoided her deed made in 1847.

The remaining question is whether she is estopped by anything which she has done from asserting her right to the land

in controversy. In regard to this very little need be said. It is not insisted that she did anything since she attained her majority which can work an estoppel. All that is claimed is that when she made her deed she asserted that she was of age and competent to convey. We are not, therefore, required to consider how far a married woman can be estopped by her acts when she has the single disability of coverture. The question is, whether acts and declarations of an infant during infancy can estop him from asserting the invalidity of his deed after he has attained his majority. In regard to this there can be no doubt, founded either upon reason or authority. Without spending time to look at the reason, the authorities are all one way. An estoppel *in pais* is not applicable to infants, and a fraudulent representation of capacity cannot be an equivalent for actual capacity. *Brown* v. *McClune*, 5 Sandf. (N. Y.) 224; *Keen* v. *Coleman*, 39 Pa. St. 299. A conveyance by an infant is an assertion of his right to convey. A contemporaneous declaration of his right or of his age adds nothing to what is implied in his deed. An assertion of an estoppel against him is but a claim that he has assented or contracted. But he can no more do that effectively than he can make the contract alleged to be confirmed.

It is, however, unnecessary to dilate upon this branch of the case. The judgment of the Circuit Court was not rested upon any estoppel of the complainant.

Our conclusion upon the whole matter is that the complainant was entitled to the decree for which she asked. The decree will be reversed, and the record remitted with instructions to enter a decree in accordance with this opinion; and it is

*So ordered.*