E. R. LANCASTER *et al v.* E. R. LANCASTER JR., *et al.*.

1. MARRIAGE SETTLEMENT. *Infancy.* Although both of the contracting parties to an ante-nuptial settlement of the wife's property, real and personal, in trust for her and her heirs, be under age, the settlement would at most only be voidable, not void, by reason of the infancy.

2. SAME. *Same. Disaffirmance of contract.* The husband might disaffirm the contract so far as he was personally concerned, notwithstanding the subsequent marriage, and would affirm it by acts or unreasonable delay.

3. SAME. *Same. When right to disaffirm accrues.* The right of an infant to disaffirm in equity a conveyance of land or personalty because of infancy, accrues as soon as the deed is executed, and, therefore, a woman who executes an ante-nuptial settlement, and then marries while under age, may affirm or disaffirm the deed during coverture; and unreasonable delay, with a recognition of the deed in the meantime by accepting and insisting upon its benefits will validate it.

4. SAME. *Trust settlement. Estate.* A trust settlement of the wife's own property to her separate use without any power of anticipation, and with only the limited right of disposition by last will, or instrument in the nature of a last will, does not give the wife an absolute estate in the property.

5. CHANCERY PLEADINGS AND PRACTICE. *Suits in respect to separate estate.. Parties.* The rule of equity is that the husband must be made a defendant to all suits in respect to the wife's separate estate, and not a complainant, although no question arise between him and the wife; and when the husband seeks an object adverse to the wife, the bill is considered his bill, and the wife must be made a defendant.

FROM MADISON.

Appeal from the Chancery Court at Jackson. T. C. MUSE, Ch.

BULLOCK & HAYS for complainants.

CHARLES B. HERRON for defendants.

COOPER, J., delivered the opinion of the court.

On September 2, 1850, Susan R. Connally and E. R. Lancaster, being both then under age, in anticipation of their intermarriage, which took place shortly afterwards, entered into an ante-nuptial contract, by which the land now in question and certain slaves, the property of the intended wife, were settled upon her to her sole and separate use, enjoyment and control during the joint lives of her and Lancaster; and if the land was rented out, to pay her the proceeds during their joint lives to her sole and separate use from time to time, so that she should not sell, mortgage, charge, or otherwise dispose of said lands, or the proceeds thereof, by way of anticipation; and if she should survive her husband, to convey and deliver the property to her and her heirs, but should she die during the life of her husband, in trust, after her decease, to convey the land and its proceeds to such person or persons as she, by her last will and testament, notwithstanding her coverture, or by any writing in the nature of, or purporting to be her last will and testament, should limit, bequeath, devise and appoint; and in default thereof upon trust to pay, transfer, assign and convey the same to the next of kin and heirs at law, under the laws of descent and distribution, of the said Susan R.

The contracting parties intermarried, and lived in this State until 1867, when they removed to the State of Virginia, where they have since resided. On Sep-

tember 13, 1872, E. R. Lancaster filed a bill in the chancery court of Madison county, in which county the land in question lies, against his wife, a new trustee appointed after the death of the original trustee, and his children by his wife, then five in number, to have the land sold, and the proceeds reinvested under the same limitations and powers, and upon the same uses and trusts as contained in the original deed, upon the ground that it was manifestly for the interests of all concerned. The bill recited that it was filed at the request of the wife for the purposes mentioned. Such proceedings were had in the cause that on November 9, 1878, a final decree was rendered in accordance with the prayer of the bill, and authorizing the land to be sold by the clerk and master. The decree recites that the cause was heard "upon the bill, *pro confesso,* answers, and answers of the minors by guardian *ad litem.*" But it does not appear how the defendants were brought before the court, nor whether the wife filed any answer, nor against whom an order *pro confesso* was taken. No sale, it seems, could be effected under the decree.

On May 6, 1881, the present bill was filed by E. R. Lancaster and wife, and three of their children, who were of age, against four other of the children, alleged to be minors, and the trustee under the marriage settlement. The object of the bill is to have the settlement construed and the wife declared to have an absolute estate in fee in the land with full power of disposition ; and, if mistaken in this, that the settlement be set aside as of no force, because, first,

the property being hers, the settlement could not affect her; and secondly, because the wife was under age at the execution of the instrument, and has since been a *feme covert.* The record shows the appointment of a *guardian ad litem* for the finfant defendants, and an answer put in by him, but does not show any service of process on the infants, or publication against them as non-residents. All the parties, except the trustee, are alleged to be non-residents of the State. There is the recital of an entry on the minutes that a *pro confesso* had been taken against the trustee. On final hearing the chancellor was of opinion that the marriage settlement was only voidable, not void, by reason of the infancy of Susan R. Connally at the time of its execution, and that she had ratified it after she came of age by her long acquiescence, and by the bill of September 13, 1872 He was further of opinion that the wife had no power of disposition except in accordance with the terms and limitations of the settlement. From the decree of the chancellor the complainants appealed. The Referees have reported in favor of affirmance. The exceptions of the complainants open the case. No point is made that the defendants are not properly before the court by service of process or publication, and we understand that the omission of the evidence of these facts from the transcript is merely clerical.

Although both Lancaster and his intended wife were infants at the time the ante-nuptial conveyance in question was executed, it was based upon a valid contract and a good consideration, marriage being al-

ways a sufficient consideration for such settlements.
And if it be conceded, as perhaps it may be, that
the infancy of the parties rendered the deed voidable
at the instance of either within a reasonable time
after coming of age, the lapse of over a quarter of
a century after that period is, of itself, if there be
nothing to do away with the effect of delay, suffi-
cient to validate it.    So far as the husband is con-
cerned, mere delay, under the circumstances, for an
unreasonable time after coming of age would bar his
right: *Hook* v. *Donalson,* 9 Lea, 56.    His subsequent
marriage would, of course, place him under no disa-
bility to act.    In addition, we have his bill of Sep-
tember 13, 1872, sworn to by him, in which, upon
the basis of the validity of the ante-nuptial deed, he
seeks to have the land sold for the benefit of his
wife and children, and the proceeds of sale reinvested
upon the same uses and trusts.    The record of that
case, so far as it has been copied into this tran-
script, does not show whether the wife made herself
an assenting party to the proceedings by answer in
person, as required by the statute : Code, sec. 3325.
A decree without such an answer was a nullity.

If, as suggested in argument, the wife did not
become a party to that suit in the prescribed mode,
the proof shows that she has continued for over a
quarter of a century after coming of age to recog-
nize the deed as valid, and acted under it by hav-
ing a new trustee appointed in place of the original
trustee who had died, renting out the land through
him, and receiving the rents.    Such acquiescence and

conduct, and perhaps acquiescence alone, for so long a period, would be sufficient to validate the deed, unless the disability created by the subsequent coverture would prevent the result. It is well settled that where both of the disabilities of infancy and coverture exist when the husband and wife join in a conveyance of the wife's land, the wife's right to avoid the deed will not be lost until a reasonable time after the removal of both disabilities: *Matthewson* v. *Davis*, 2 Cold.. 451; *Sims* v. *Everhardt*, 102 U. S., 300. At the date of the execution of the deed before us, the female grantor was only under the disability of infancy. And the question is, what effect did her subsequent coverture have upon her power to affirm or disaffirm her voidable deed of land? The point is one of some nicety, for it may depend upon the time when the right to act accrued.

The one disability, this court has held, can derive no aid from, or have any effect upon the other *Scott* v. *Buchanan*, 11 Hum., 468. The two disabilities cannot be added to each other if they do not co-exist when the right accrues: Code, sec. 2759; *McDonald* v. *Johns*, 4 Yer., 258. If, therefore, the power to disaffirm arose as soon as the deed was executed, the subsequent disability of coverture would not affect the right. The better authorities agree that a contract of a personal kind, or relating to personal property, whether executed or executory, may be avoided under age and immediately: *Nashville & Chattanooya Railroad Co.* v. *Elliott*, 1 Cold., 611; *Robertson* v. *Simmons*, 4 Heisk., 135; *Stafford* v. *Roof*, 9

Cow., 628; *Willis* v. *Twombley*, 13 Mass., 204. The old rule was that an infant could not disaffirm his deed conveying land while he remained under age, the reason being, according to the authorities, that a disaffirmance works a reinvestiture of the estate in the infant, and he is presumed not to have sufficient discretion for that: *Zouch* v. *Parsons*, 3 Burr., 1808; *Roof* v. *Stafford*, 7 Cow., 183. But even where this rule rigidly prevailed, the infant might enter the premises and take the profit: *Bool* v. *Mix*, 17 Wend. 119. And he might by next friend go into equity and have a receiver: *Matthewson* v. *Johnson*, 1 Hoff. Ch., 560. The rule was mentioned in some of our earlier cases without being involved or decided: *Scott* v. *Buchanan*, 11 Hum., 474. But it was said in *Singleton* v. *Love*, 1 Head, 357, that the husband and infant wife might affirm or disaffirm a sale of the land and personalty of the wife made by the guardian at her request before the marriage. And the power of the court of chancery in this State to validate a void or voidable sale when for the interest of an infant is well settled: *Kirkman, ex parte*, 3 Head, 518; *Bryant* v. *McCollum*, 4 Heis., 521; *Elliott* v. *Blair*, 5 Cold., 185. It is equally well settled that a married woman, who was also an infant when she joined in a conveyance of her land, may in equity disaffirm the sale during coverture: *Dodd* v. *Benthal*, 4 Heis., 601. In *Temple* v. *Hawley*, 1 Sandf. Ch., 153, it was held that a married woman, who, on the eve of her marriage, and while an infant, had made a settlement of her real estate, might af-

firm it after she came of age during coverture. And in *Whichcote* v. *Lyle*, 28 Penn., 73, it was held that the husband was bound by a marriage settlement of the wife's realty, although the wife was a minor when it was entered into, and that the weight of authority inclines in favor of the right of a *feme covert* to disaffirm the settlement during the coverture. The very fact that cumulative disabilities are not allowable requires, *ex necessitate*, to prevent a failure of justice, that a wife must have the power to affirm or disaffirm a conveyance of land made during infancy, for she may come of age before the coverture, and yet for too short a period of time to bar her right. We think the better doctrine to be that a wife may in equity affirm or disaffirm an ante-nuptial marriage settlement of either land or personalty, or both, voidable by reason of her infancy.

The deed in question gives the wife during her coverture with the present husband only a limited power of disposition by last will or instrument of writing in the nature of a last will, and not an unlimited power: *Hoyle* v. *Smith*, 1 Head, 90. The interest of the children is only contingent, and may be lost by the exercise of her power by the mother: *Hamilton* v. *Insurance Co.*, 3 Tenn. Ch., 124, affirmed 6 Lea, 402. The chancellor and the Referees have, therefore, construed the instrument correctly.

The husband having no interest under the deed of settlement, had no right to ask for a construction of it, and was acting in antagonism to his wife in seeking to set the deed aside. The rule of equity is

that the husband must be made a defendant to all
suits instituted in respect of the wife's separate estate,
although no question arise between him and his wife:
*Wake* v. *Parker*, 2 Keen, 59; *Sigel* v. *Phelps*, 7 Sim.,
239. And where the husband seeks an object adverse
to the wife, the bill is considered as his bill alone,
and the wife must be made a defendant: *Hanvott* v.
*Cadwallader*, 2 R. & M., 545; *Alston* v. *Jones*, 3
Barb. Ch., 401. Upon its face this is clearly the
bill of the husband alone, and there is nothing to
show that the wife has ever given her consent to the
proceedings in such a way as to make them binding
upon her.

The report of the Referees will be confirmed, and
the chancellor's decree affirmed with costs against all
the complainants except the wife.