Susan Charles and Sarah Charles

*v.*

Magdelena Hastedt et al.

A widow and seven children joined in a mortgage of lands belonging to the children, subject to their mother's dower, to secure a sum of money loaned in cash by the mortgagee, which was used to pay, *first*, an assessment which was a valid lien on the mortgaged premises; *second*, a mortgage put on it by the widow; *third*, a promissory note of the widow and one adult child; and the balance was paid to the widow. Two of the children were infants at the execution of the mortgage, and were known to be such by the agent of the mortgagee who negotiated the loan. The younger of the two infants, when asked by the officer who took the acknowledgment in the presence of the agent if she was of age, answered that she was.—*Held*, the mortgage could be sustained against the two infants to the extent only of the assessment which was paid with its proceeds.

Final hearing on pleadings and oral proofs.

*Mr. Henry E. Wills*, for the complainants.

*Mr. James A. Gordon*, for the defendants.

Pitney, V. C.

This is a bill to foreclose, founded on a mortgage of $1,600, dated the 1st of February, 1890, given to the complainants by the defendants, Magdelena Hastedt and her seven children, upon property of which their father, John H. Hastedt, died seized, May 2d, 1874.

Two of the defendants, to wit, Annie Hastedt and Addie Hastedt, answer, the latter by her guardian *ad litem*, denying the allegation of the bill that they or either of them were indebted to the complainants at the time of the execution of the mortgage, and alleging that at that time they were infants under the age of twenty-one years, and expressly disaffirming the mortgage.

At the hearing the proofs showed that at the execution of the

mortgage Annie Hastedt was twenty years and less than two months old, and that Addie Hastedt was three years younger, and was still an infant at the time her answer was filed.

In answer to this plea of infancy the complainants set up and proved certain facts, which they contend avoid the effect of the infancy of these two defendants, and after the proof was adduced they were permitted to file an amended bill setting up the facts so relied upon, upon the understanding that the defendants, claiming the privilege of infancy, should be considered as denying those facts without filing a formal answer. The substance of the amendment is, that the defendants Annie and Addie, at the time of the execution of the bond and mortgage, represented to the agent of the oratrices, who had charge of the making of the loan, that they were of the lawful age of twenty-one years, and that they fraudulently concealed their infancy; and the amendment further alleges that the money loaned on the security of the mortgage was used for the purpose of paying off then existing debts of the defendants, and taxes and other encumbrances then a lien upon said mortgaged premises, and were applied by the defendants to the payment of said debts and encumbrances for the benefit of the estate of all the defendants' herein, including the infant defendants.

The proofs show that in July, 1877, Magdelena Hastedt (the widow) executed a mortgage on the premises to one Killian to secure $200, which was still a lien upon her dower interest in the premises at the date of the giving of the mortgage now in question. It further appeared that there was at the giving of the mortgage here in question an assessment against the property, under the Martin act, amounting to $672.85. It further appeared that Mrs. Magdelena Hastedt and one of her sons had borrowed some $400 of a Mr. Emil Steger, upon which, at the date of the mortgage in question, there was due $485.50, making an aggregate of about $1,400; that these matters being pressing, Mr. Steger, acting as the agent of the complainants, negotiated this loan; that the mortgage was duly executed by all the defendants, and the assessment, the old mortgage and the note of Mrs. Hastedt and son were paid out of it; that $67.28 commis-

Charles v. Hastedt.

sions were allowed to Mr. Steger for procuring the loan, official searches cost $9, and the cost of drawing the bond and mortgage was $5, which, added to the other items, made a total of $1,483.28, and that the balance of a little over $100 was paid by Mr. Steger, acting for the complainants, to Mrs. Magdelena Hastedt. It thus appears that of the whole $1,600, the only sum which went directly to the benefit of these infants and their estate in the land, was the amount of the assessment under the Martin act. They derived no other benefit from it. They were in no wise liable for the mortgage given by their mother, nor on the note given by their mother and one of their brothers to Mr. Steger, and they got none of the money which was paid to their mother.

With regard to the allegation that these infants were guilty of a fraud in asserting themselves to be of age, the proof was that Mr. Steger, the agent of the complainants, was well acquainted with the Hastedt family, having known them previous to the death of the father, and having continued the acquaintance down to the time of the transaction in question. The appearance of the two answering defendants at the hearing in March, 1893, was decidedly youthful, and must have been more so in March, 1890, three years earlier, when the mortgage was executed. There is also proof that after the loan was proposed by Steger, and before the papers were executed, Steger inquired of one of the sons (Henry) whether the two younger children were of age, and Henry replied that he could not swear to it, and went home and asked his mother and sisters, and learned that both were under age, and returned and reported the result to Mr. Steger, who said "it would make no difference whether they were of age or not, he would appropriate the money for us." The papers were prepared and the parties met at Mr. Steger's office for their execution, and Mr. Grece, a master of this court, was called in to take the necessary acknowledgment. He swears —and I place full reliance upon his evidence—that he was sitting at a table in the small inner room and the parties came in from the outer room one at a time, signed their names and made the proper acknowledgment; and that as the youngest of the two girls presented herself he at once observed her extreme youth

and asked the question whether or not she was of age, and she said she was, and her brother said she was, and that the mother nodded assent, and that Mr. Steger said to him he must not put any question about the age of ladies, or something to that effect, which Mr. Grece understood as an expression of a desire that the question of the age of the parties should not be inquired into.    Mr. Grece says that the younger-looking of the two having thus been represented as of age, he made no inquiry as to the older.    The effect of the evidence on my mind was, and is, to satisfy me that Mr. Steger, who, it was admitted at the argument, acted as the agent of the complainants, was fully aware that these two girls were under age, not only from his familiarity with the family, but from positive information given by the sons, to say nothing of the appearance of the children themselves, which was quite sufficient to excite the attention of Mr. Grece, and must have had the same effect upon Mr. Steger; and I am forced to the conclusion, notwithstanding the denial of Mr. Steger, that he knew they were under age and was a conscious participant in the plan to pass them off on Mr. Grece as adults. The infants themselves were mere passive instruments in the hands of older persons, including Mr. Steger.    There is no proof of any misrepresentations to any person except Mr. Grece, the acknowledging officer.

The result is that the complainants' case fails as against the two infants, except, indeed, as to the assessment under the Martin act, to which extent I held at the hearing the mortgage must stand as against them.    In the first place, they derived no direct benefit, except as to that assessment, from the loan; and the adjudged cases indicate a decided indisposition on the part of the courts to go further in such cases than to hold infants liable for what they have actually received.

In the case of *Hayes* v. *Parker, 14 Stew. Eq. 630,* the court of errors and appeals did, indeed, go further and sustain to its full extent the release there executed by the infant to his guardian, but the circumstances of that case were peculiar.    The infant there not only made the fraudulent representation as to his age, but he accepted in payment, with the advice and consent of

his father, certain lands at a fair valuation, and in order to obtain those lands the guardian was obliged to execute a release to a third party, from which he could not be relieved except by returning the lands, and this the infant had prevented him from doing by conveying some or all of them away to other third parties. At *pp. 631, 632*, the learned judge who delivered the opinion of the court says : "At law it is conclusively presumed that a person within the age of twenty-one is unfitted for business, and that every contract into which he enters is to his disadvantage, and that he is incapable of fraudulent acts which will estop him from interposing the shield of infancy against its enforcement. In equity, however, this rigid rule has its exceptions. Equity will regard the circumstances surrounding the transaction—the appearance of the minor, his intelligence, the character of his representations, the advantage he has gained by the fraudulent representations, and the disadvantage to which the person deceived has been put by them, in determining whether he should be permitted to invoke successfully the plea of infancy."

In *Sims* v. *Everhardt, 102 U. S. 300*, which was an action in equity for dower, a married woman, while an infant, had joined her husband in the conveyance of her land, the consideration of which was paid to her husband, and had signed a written statement—declared to be made as an inducement to the carrying out of the contract—that she was above the age of twenty-one years. It was held, notwithstanding that statement, that she might recover the land after she had been divorced from her husband, and without paying back any of the consideration.

In *Stikeman* v. *Dawson, 1 De G. & S. 90*—a case decided by Sir Lancelot Shadwell after great consideration and a review of all the cases to its date—an infant speculated in stocks through a firm of Liverpool brokers, and in so doing became indebted to them, and being possessed of certain shares of stock, executed an ordinary assignment in blank of the shares and delivered them to his brokers in part payment of his indebtedness. The Liverpool brokers sent them to their London brokers for sale, and they sold them to the complainant and received from him full

payment therefor, which was forwarded to the Liverpool brokers and kept by them. No positive affirmation was made by the infant that he was of age, but the court found as a matter of fact that the Liverpool brokers must have known that he was an infant. After he became of age he sued the London brokers in trover for the shares, and they filed a bill for an injunction. The bill was dismissed.

In *Nelson* v. *Stocker*—decided in the first instance by Sir John Stuart, whose opinion is reported in *5 Jur.* (*N. S.*) *262*, and the opinion on appeal, in the same volume, *p. 751; 28 L. J. Ch. 760; 4 De G. & J. 458*—the case was this: A young man of seventeen, previous to his marriage with a widow of thirty-two, who was possessed of personal property, executed a marriage settlement by which he covenanted to pay £1,000 to the trustee of the settlement for the benefit of the wife for life and after her death to go to her children by the first marriage. Before executing it the groom, being asked by the solicitor of the intended wife whether he was of age, said he believed he was. The intended wife, however, knew that he was not. After the marriage he received the wife's personal estate, and, after her death, refused to pay the £1,000. Sir John Stuart held him liable on the ground that he received the consideration for the contract both in the marriage and in the possession of the personal property of his wife, which he still enjoyed, and that he had affirmed the contract after he became of age. But the lord justices of appeal reversed this decree, and held him not liable, on the ground that the wife knew that the representation was false, and, although her solicitor might not have known it, she was just as much bound as if he had.

Turner, L. J., said (at *p. 465*): "Some wrong or injury to the party complaining must be shown in order to call the court into action, and I do not see how any wrong or injury can be said to have been done to any person to whom a false representation is made when the person to whom it is made knows it to be false. If the representation is known to be false the person to whom it is made cannot be deceived by it. Looking at the case in this point of view, it opens a question of great general importance.

Charles *v.* Hastedt.

The law has, for the wisest reasons, thrown around infants a protection against acts done by them during their infancy, and the policy of the law cannot be maintained if this privilege of infancy be allowed to be broken in upon on slight and insufficient grounds. If the contracts of infants with persons who know them to be under age are held to be binding upon the ground that the infants represented themselves to be of age, there will hardly be a case in which the plea of infancy will be of any effect, and the door will be open to all the frauds against infants which the law was intended to protect them from. The privilege of infancy is a legal privilege. On the other hand, it cannot be used by infants for the purpose of fraud. On the other hand, it cannot, I think, be allowed to be infringed upon by persons who, knowing of the infancy, must be taken also to know of the legal consequences which attach to it."

And to the same effect is the language of Vice-Chancellor Van Fleet in *Parker* v. *Hayes, 12 Stew. Eq. 476 :* "A false representation made to a person who knows it to be false is not, in legal estimation, a fraud. True, it is a falsehood, and perhaps, judged according to moral standards, it is none the less sinful because spoken to a person who cannot be deluded by it, but a false representation, to be the proper subject of judicial action or cognizance, must be the cause of legal wrong or injury, and no such result can follow where the representation is made to a person who knows it to be false, for in such case he cannot be deceived by it, and if he acts on it, his act will not be the result of deception, but of his own folly."

And see, in this connection, *2 Pom. Eq. Jur.* § *894.*

I will advise a decree for the complainant, that the estate of all the defendants be sold to pay, in the first place, the amount due upon the assessment under the Martin act, with interest and costs, less a proportionate amount of whatever interest has been paid upon the mortgage, and that the surplus moneys which remain after satisfying that decree shall be disposed of as follows : the interest of the widow shall be ascertained according to the life tables, and the amount thereof, together with five-

sevenths of the remainder, shall go towards paying the amount due to the complainants, and the balance—two-sevenths—shall be paid to the infants.