# L. L. McCANDLESS *v.* T. F. LANSING, W. R. CASTLE, TRUSTEE, AND JAMES B. CASTLE.

## EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MAY 17, 1909.                    DECIDED JUNE 5, 1909.

### HARTWELL, C.J., WILDER AND PERRY, JJ.

INFANTS—*disaffirmance of deed.*

> On the undisputed facts it is held as a matter of law that mere silence for two years and ten months after majority did not prevent an Hawaiian girl from disaffirming her deed made when

fifteen years of age, and that she was not estopped from so doing by a foreclosure sale of the land during her minority.

## OPINION OF THE COURT BY HARTWELL, C.J.

This was an action to quiet title in 1.48 acres of land at Waiahole, Oahu, described in R. P. No. 2445. The heirs of the patentee were his two sons, the elder of whom died without issue, his share descending equally to his widow and younger brother who then owned three undivided fourths which upon his death descended to his daughter Malaea subject to the widow's dower. The plaintiff, at some date not stated, purchased the one undivided fourth share which had descended to the widow of the elder brother, concerning which share there is no controversy. October 19, 1898, Kalua, the younger brother's widow, conveyed for $60 her dower right in the three-fourths interest of which her husband died seized to the defendant Lansing who conveyed the same to the defendant James B. Castle. September 18, 1901, Malaea conveyed to Lansing for $80 all "her right, title, interest, possession, claim and demand whatsoever, as well in law as in equity, of, in and to" the land, the interest conveyed being stated as "all of my interest in the estate of my father Kekauhooulu," her deed containing covenants of warranty and describing herself as "unmarried, now of age having been born on the 17th day of June, A. D. 1881." April 22, 1907, Malaea, in consideration of $100, her husband James Watson consenting, quitclaimed to the plaintiff all her right, title, interest, claim and demand in the same land. The deeds were recorded. The court instructed the jury to find for the plaintiff subject to the dower interest held by the defendant James B. Castle. The defendants excepted to the direction and verdict as against law and the evidence and to the refusal of the court to instruct the jury to find for the plaintiff for only one-fourth of the land and in favor of the defendant James B. Castle for three-fourths. It was shown conclusively at the trial

that Malaea was born in the year 1886. It was shown by the defendants' exhibits that upon foreclosure by public sale of a mortgage made by Lansing dated August 12, 1897, Bonny, trustee, became the purchaser May 14, 1904, and that the land purchased at the sale included that which is described in R. P. 2445. Since Lansing had not acquired the property at the date of his mortgage it may be inferred that it was given later as additional security. It further was shown that May 14, 1904, Bonny conveyed to W. R. Castle the property sold on foreclosure. The deed from Bonny to W. R. Castle dated May 14, 1904, was acknowledged December 24, 1904, and recorded March 1, 1905. James B. Castle leased the land to Lansing December 20, 1905, for a term ending December 31, 1907, at an annual rental of $1080. The lease is not recorded nor does it appear how the title went from W. R. Castle to J. B. Castle. June 10, 1907, McCandless leased the land to C. Hing Wai Co. for the term of twenty-one months from April 1, 1907, at an annual rental of $25, the lease being recorded June 12, 1907.

The defendants claimed in the trial court and in argument on the exceptions that Malaea failed to disaffirm her deed to Lansing within a reasonable time after coming of age and that when she quitclaimed to the plaintiff April 22, 1907, there had been such changes in the condition of parties, particularly in the purchase by James B. Castle, that it was inequitable to allow her to disaffirm and that under all the circumstances her deed to McCandless did not constitute a disaffirmance.

The defendants also contend that unless the court had held in their favor the question should have been left to the jury whether the grantor's acquiescence in the sale of the property by her grantee, the public foreclosure sale, change of title and recorded declaration of minority was to be inferred; but as all the facts are shown by clear and undisputed evidence their legal effect was for the court and not the jury to determine. *Peabody*

*v. Damon,* 16 Haw. 447, 451. In such cases "what constitutes a reasonable time is a question of law." *Oil Co. v. Van Etten,* 107 U. S. 325, 334. That the quitclaim deed was a clear indication of the grantor's intention to repudiate her earlier deed is plain. *Kekai v. Limalau,* 16 Haw. 464, 465, held that an action of ejectment by an infant's heirs was a sufficient disaffirmance on their part of a lease made by the infant, *Tucker v. Moreland,* 10 Pet. 72, being cited with approval, in which case the court said, "We do not mean to say that in all cases the act of disaffirmance should be of the same or of as high and solemn a nature as the original act; for a deed may be avoided by a plea." The grantor is not presumed to have made her deed by mistake as to the interest conveyed or to have forgotten that she had conveyed it; on the contrary she is presumed to have intended the clear consequences of her act and to have intended to repudiate the earlier deed.

There is no estoppel resulting from the publication of the notice of foreclosure or in the recording of the affidavit of foreclosure and the deeds. A minor is not subject to be estopped even if shown to have known of the notice of foreclosure sale and affidavit, all of which occurred before she came of age. She would not, as in case of a subsequent purchaser, be legally affected by the record of the deeds.

The only question then is whether, taking the second deed to be a disaffirmance of the earlier, it was unreasonably delayed after the grantor came of age. The delay in this case, as agreed by counsel, was two years and ten months. It is impossible to fix any definite time as reasonable. Expenditures incurred by the grantee or his assigns, if known by the grantor, may estop his ever asserting his claim or he may be estopped by waiting so long as to lull the grantee into a sense of security. If the grantor had been a boy instead of a girl his time for disaffirming would not have begun for two years later. Probably the mother induced the girl to make the deed and took the purchase

money for herself and it was not until she married and was informed of her right that she exercised it. The unusual fact is that her deed stated the date of her birth, making her out to be about twenty instead of fifteen years of age, a statement which could hardly have misled any observing person. The protection which the law gives to a minor allows him after he comes of age time to obtain independent advice, which the minor could not legally contract for, and to make such examination as to satisfy himself whether he would do better by letting the transaction stand or repudiating it. The time would vary with mental capacity, bodily conditions, recentness or remoteness of the transaction, the time when the salable value was ascertained and many other conditions. A bright person would find out his interest sooner than a dull person would do. If the minor was deceived the effect of the deceit or misrepresentation would remain until the truth is shown. Here the only facts that appear are that the grantor was a girl about fifteen years of age; that her father was not living; that her mother had sold her dower to the same grantee; that the minor's deed misrepresented her age by about five years; that about two years and ten months after coming of age, having meantime become married, she conveyed the land, by her husband's consent, to the plaintiff.

The variety in the decisions concerning the time considered as reasonable for disaffirming a minor's deed is partly explained by the varied circumstances, and perhaps to some extent is influenced by the different views of courts concerning the policy of protecting minors against undue influence, imposition, and their own improvidence on the one hand, and on the other hand of securing titles obtained without knowledge or means of learning that the grantor was under age. Thus three years were held to be a reasonable time in *O'Dell v. Rogers,* 44 Wis. 136, while in *Goodnow v. Empire Lumber Co.,* 31 Minn. 468, three and one-half years were held to be an unreasonable time. We are aware of no case in which mere silence for two years and

ten months has been held to be sufficient to preclude a disaffirmance. Under the circumstances, and, especially in view of the fact that the grantor was a Hawaiian girl, the disaffirmance was within a reasonable time.

Exceptions overruled.

*A. G. M. Robertson* for plaintiff.

*D. L. Withington* and *W. A. Greenwell* (*Castle & Withington* on the brief) for defendants.

### DISSENTING OPINION OF PERRY, J.

While concurring in the foregoing opinion in so far as it is there held that the quitclaim deed was a sufficient act of disaffirmance, that the defendant's claim of estoppel against Malaea cannot upon the undisputed facts be supported, and that when, as in the case at bar, the facts are undisputed the question of whether the time within which disaffirmance is attempted is reasonable or unreasonable is for the court to determine, I feel compelled to dissent from the view that the disaffirmance by Malaea was within a reasonable time. To the circumstances of the case at bar recited in the majority opinion may be added the fact that, as the evidence would have justified the jury in finding, during the period from the date of the first to the date of the second deed Malaea, a Hawaiian by birth, lived at Kahaluu, and, perhaps, at Wailau in the district of Koolaupoko and in Honolulu, all on the island of Oahu,—thus distinguishing to some extent this case from those, like *O'Dell v. Rogers,* 44 Wis. 136, in which the disaffirming grantor had resided most of the time after reaching majority in a state other than that in which the land conveyed was situated. The case at bar is one of mere inertness or silence, continued for two years and ten months.

In view of my conclusion that the act of disaffirmance was not within a reasonable time, it becomes necessary for me to consider what length of time is permitted by the law to a grantor

to elect whether or not to disaffirm, a subject not touched upon in the prevailing opinion.

It is now undoubted that the deed of a minor is voidable and not void and that it may, after he becomes of age, be either ratified by him by his acts or by his failure to act under circumstances which would require action on his part, or disaffirmed by him, but the authorities are in conflict as to the time within which such disaffirmance may take place. Some hold that the grantor may disaffirm at any time within the period prescribed by the statute of limitations relating to real actions and others that he must do so, if at all, within a reasonable time after attaining the age of legal majority. Those favoring the former rule either assert it without giving any reasons or, when reasoning is given, it is either that by analogy the minor should have the same length of time in this class of cases as would be permitted in other cases where the recovery of land is sought, or that the statutes of limitations relating to real actions apply to this class of cases. Neither reason suggested in favor of the statutory period rule appeals to me as sound. The statute permits a recovery, if at all, within the prescribed period from the time *when the right of action first accrued.* The deed of the minor being voidable passes the title and the latter remains in the grantee until something sufficient in law for the purpose happens to divest the grantee of it and to revest it in the grantor. That something, it is clear, must be a valid disaffirmance. Nothing short of it will suffice. Until disaffirmance there is no title and therefore no right of action in the grantor. The mere coming of age does not alter the situation as to the title. Unless the minor acts the title still continues in the grantee. If the statute of limitation applies at all, it must apply from the date of the deed, from the date of majority, from the date of suit, or from the date of some other act of disaffirmance after majority. Certainly it cannot be contended with any force that it runs from the date of the deed,

McCandless v. Lansing, 19 Haw. 474.

and, as already suggested, the mere arrival at majority does not change the state of the title. Nor can it be held to run from the date of the suit for then it would be in the power of a grantor to postpone the bringing of the action indefinitely and this, of course, the law cannot tolerate. There must be some known limit of time for action not wholly within the power of the grantor to fix. To say that the statute runs from the date of disaffirmance would still leave the question unsolved as to when disaffirmance must take place and that, too, irrespective of whether or not the institution of an action is in itself a sufficient disaffirmance.

I think that the correct rule is that disaffirmance must be had within a reasonable time after the minor reaches majority. The purpose of the law in allowing time is to protect minors from their ignorance and improvidence, but the grantee is nevertheless entitled to some consideration (Devlin on Deeds, Sec. 91), not more than is fairly consistent with due protection to the interests of the minor. *Goodnow v. Empire Mining Co.,* 31 Minn. 468. The desirability of certainty and stability in titles is deserving of some weight. As a learned judge once said in a similar case, "the world must move." The grantor once given a period of time within reason for the making of his choice between ratification and revocation of his act done in minority must permit titles to become settled and business to proceed.

It may be said, however, that in *Irvine v. Irvine,* 9 Wall. 617, 627, and in *Sims v. Everhardt,* 102 U. S. 311, 312, the supreme court of the United States has expressly decided that the better rule is that concerning the statutory period. In the first of these cases the only remark of the appellate court was that an instruction of the trial court in effect laying down the statutory period rule "was all that the plaintiff had a right to demand." This is not necessarily a statement to the effect that the plaintiff had a right to demand as much; and yet it is

true that in the *Sims* case the court said, "such was in effect the ruling" in the Irving case. In the *Sims* case it is not entirely clear how far the court intended to rely for its actual decision upon what it said upon the subject of the two rules. It may be that it intended to base its conclusion on the ground that the full statutory period of limitations had not run against the grantor (not more than two months had elapsed) as well as upon the ground that the disaffirmance had been in view of the circumstances of that particular case within a reasonable time; and yet in *MacGreal v. Taylor*, 167 U. S. 688, 697, the court, referring to the *Sims* case, said that it had "reversed the decree, holding that, under the peculiar circumstances of the case, including the fact that Mrs. Sims labored under the disability of coverture when she made the deed, her disaffirmance of it was within a reasonable time, and that she was entitled to the decree asked." No reference was made in the later case to any other or different holding in the *Sims* case.

Assuming, however, that these United States Supreme Court cases, or either of them, contain an adjudication by that tribunal in favor of the statutory period rule, still this court may now, notwithstanding the amendment of March 3, 1905, concerning appeals to the federal supreme court, follow any decision to the contrary previously rendered by the courts of Hawaii. *Rubenstein v. Hackfeld & Co.*, 18 Haw. 126. Such a decision is to be found in *Kahanu v. Thompson*, 1 Haw. 421 (1856). In that case Chief Justice Lee of the supreme court of Hawaii, acting under a system which permitted the justices of the supreme court to preside at jury trials, charged the jury, amongst other things, that "when a minor purchases land he must make his election within a reasonable time after reaching his majority whether he will keep the land and pay for it or disaffirm the contract and return the land." This was necessarily a rejection of the statutory period rule. (Not more than three years had elapsed after majority). It is true that in the

*Kahanu* case the question arose with reference *to* a deed to the minor and not *from* him, but this difference in fact carries with it no distinction in principle. The principle is, and it applies in the one case as well as in the other, that, with certain exceptions not now material, the contracts of a minor are voidable and not void and may be disaffirmed by him after coming of age. No reason occurs to me requiring or justifying the application of one of the two rules under consideration to cases of deeds to a minor and the other rule to cases of deeds from a minor. In each class of cases the object is to secure protection to the minor and at the same time not to unnecessarily impede the course of commerce or embarrass titles. It does not appear whether at the time of the charging of the jury by Chief Justice Lee any other justice or justices of the supreme court were with him on the bench, a practice sometimes followed in those days. However that may be, the chief justice's charge sufficiently shows what the law on the subject was deemed to be in Hawaii at that time. Chief Justice Lee's ruling was not appealed from or questioned and no subsequent decision in Hawaii holds to the contrary. On the subject of the effect of an old Hawaiian decision see *Keakauoha v. Schooner Robert Lewers*, 1 Estee 75; 114 Fed. 849. It may not be out of place to refer to the cases of *Thurston v. Bishop,* 7 Haw. 421, 437, and *Estate of Kealii-ahonui,* 8 Haw. 93, 99. In the first of these the court held that it was the duty of a person whose claim had been denied by the Land Commission during his infancy "to assert his claim to this land within a reasonable time after his coming to full age," and in the second that "in any case of improper action by a prochein ami, where the infant might obtain relief, the application to the court must be made by the infant promptly on becoming of age, otherwise the infant's silence will amount to an affirmance." The principle there involved is not precisely the same but it is closely related to that involved in the case at bar. In *Nawahi v. Hakalau Plantation Co.,* 14 Haw. 460, where

a lease of a minor's land had been made to the defendant by the guardian, the court held that while the lessee was absolutely bound by the lease the ward or landlord might or might not at his option terminate the lease "on arriving at majority." While nothing further is said on the subject now under consideration the inference, if any, would seem to be that such option must be exercised promptly after reaching majority.

In my opinion the delay of two years and ten months was under the circumstances disclosed by the evidence, and with nothing to explain or excuse it, unreasonable, a verdict should not have been directed for the plaintiff and a new trial should now be granted.